J-S17011-16

2016 PA Super 28

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JUSTIN SECRETI | |
| Appellant | No. 578 WDA 2015 |

Appeal from the PCRA Order December 1, 2014
In the Court of Common Pleas of Washington County
Criminal Division at No(s): CP-63-MD-0001637-1994

BEFORE: GANTMAN, P.J., SHOGAN, J., and FITZGERALD, J.*

OPINION BY GANTMAN, P.J.:                    **FILED FEBRUARY 9, 2016**

Appellant, Justin Secreti, appeals from the order entered in the Washington County Court of Common Pleas, which denied his serial petition brought pursuant to the Post Conviction Relief Act ("PCRA").[1]  We reverse the PCRA court's order, vacate Appellant's judgment of sentence, and remand for resentencing.

The relevant facts and procedural history of this appeal are as follows. Appellant was born on June 23, 1977.  On August 22, 1993, when he was sixteen years old, Appellant and two co-defendants committed a home invasion, and then robbed and murdered the victims (husband and wife) in

_____

[1] 42 Pa.C.S.A. §§ 9541-9546.

_____

*Former Justice specially assigned to the Superior Court.

their home.  Appellant pled guilty on November 1, 1995, to two counts each of first-degree murder, aggravated assault, and robbery, and one count each of burglary, theft by unlawful taking or disposition, receiving stolen property, and criminal conspiracy.  On January 5, 1996, the court sentenced Appellant to automatic life imprisonment without the possibility of parole on each murder offense, to be served concurrently, with no further penalties on the remaining offenses.  Appellant did not file a direct appeal.

Appellant timely filed his first PCRA petition *pro se* on January 3, 1997.  The PCRA court appointed counsel, who filed an amended petition.  On April 9, 1999, the PCRA court conducted a hearing on Appellant's amended petition, which the court denied on June 18, 1999.  This Court affirmed, and our Supreme Court denied allowance of appeal on April 3, 2001.  **See Commonwealth v. Secreti**, 760 A.2d 433 (Pa.Super. 2000), *appeal denied*, 565 Pa. 642, 771 A.2d 1282 (2001).  Appellant filed a second PCRA petition *pro se* on April 29, 2005, which the PCRA court ultimately denied on February 21, 2006.  This Court affirmed, and our Supreme Court denied allowance of appeal on February 28, 2007.  **See Commonwealth v. Secreti**, 913 A.2d 947 (Pa.Super. 2006), *appeal denied*, 591 Pa. 700, 918 A.2d 745 (2007).

Appellant filed his current PCRA petition *pro se* on August 15, 2012, asserting a new constitutional right under the United States Supreme Court's recent decision in **Miller v. Alabama**, ___ U.S. ___, 132 S.Ct. 2455, 183

L.Ed.2d 407 (2012), as an exception to the statutory timeliness requirements. The PCRA court appointed counsel, who filed an amended petition on July 2, 2013, and a second amended petition on January 6, 2014. The PCRA court issued, on September 10, 2014, notice of its intent to dismiss Appellant's petition without a hearing, pursuant to Pa.R.Crim.P. 907, based on our state Supreme Court decision in **Commonwealth v. Cunningham**, 622 Pa. 543, 81 A.3d 1 (2013) (holding **Miller**'s prohibition against mechanical mandatory life imprisonment without possibility of parole ("LWOP") sentences for juvenile offenders was not available on collateral review). The PCRA court denied Appellant's petition on December 1, 2014. Thereafter, counsel filed a petition to withdraw, which the PCRA court granted on January 22, 2015. Appellant subsequently filed, on February 3, 2015, a *pro se* petition objecting to counsel's withdrawal and seeking reinstatement of his appellate rights *nunc pro tunc*. On March 24, 2015, the PCRA court vacated its order permitting counsel to withdraw and reinstated Appellant's right to appeal *nunc pro tunc*. Appellant timely filed a notice of appeal on April 7, 2015.

Appellant raises the following issue for our review:

> DID THE [PCRA] COURT ERR WHEN IT DENIED [APPELLANT'S] PCRA PETITION, AS HE CURRENTLY SERVES A SENTENCE THE SUPREME COURT OF THE UNITED STATES DEEMED UNCONSTITUTIONALLY CRUEL AND UNUSUAL, AND WHOSE PROHIBITION MUST BE APPLIED RETROACTIVELY?

(Appellant's Brief at 4).

- 3 -

Appellant argues the **Miller** decision held that an automatic mandatory LWOP sentence, for those who are under the age of eighteen at the time of their crimes, violated the Eighth Amendment's prohibition on cruel and unusual punishment. Appellant claims **Miller** created a new constitutional rule of law, which the Supreme Court intended to apply retroactively to cases on collateral review. To support this contention, Appellant asserts the Supreme Court applied this new rule in **Miller** to its companion case, **Jackson v. Hobbs**, ___ U.S. ___, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), which was decided at the same time. Appellant contends the Supreme Court made no distinction between the **Miller** and **Jackson** cases, regarding application of the new rule, which were on direct and collateral review, respectively. Appellant claims **Miller** imposed a categorical bar to automatic mandatory LWOP sentences for juveniles. Appellant maintains that **Miller**'s ban on uncompromising sentences for a specific class of persons constitutes substantive law that compels retroactivity of **Miller** on collateral review. Appellant concludes this Court should reverse the PCRA court's order denying relief, vacate his judgment of sentence, and remand for resentencing. For the following reasons, we agree.

Our standard of review of the denial of a PCRA petition is limited to examining whether the evidence of record supports the court's determination and whether its decision is free of legal error. **Commonwealth v. Lane**, 81 A.3d 974 (Pa.Super. 2013), *appeal denied*,

625 Pa. 658, 92 A.3d 811 (2014). This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings. **Commonwealth v. Boyd**, 923 A.2d 513 (Pa.Super. 2007), *appeal denied*, 593 Pa. 754, 932 A.2d 74 (2007). We give no such deference, however, to the court's legal conclusions. **Commonwealth v. Ford**, 44 A.3d 1190, 1194 (Pa.Super. 2012).

Initially, we examine whether Appellant timely filed his current PCRA petition. **Commonwealth v. Harris**, 972 A.2d 1196 (Pa.Super. 2009), *appeal denied*, 603 Pa. 684, 982 A.2d 1227 (2009). Pennsylvania law makes clear no court has jurisdiction to hear an untimely PCRA petition. **Commonwealth v. Robinson**, 575 Pa. 500, 837 A.2d 1157 (2003). The most recent amendments to the PCRA, effective January 16, 1996, provide that a PCRA petition, including a second or subsequent petition, shall be filed within one year of the date the underlying judgment becomes final. 42 Pa.C.S.A. § 9545(b)(1); **Commonwealth v. Bretz**, 830 A.2d 1273 (Pa.Super. 2003). A judgment is deemed final "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S.A. § 9545(b)(3).

The three statutory exceptions to the timeliness provisions in the PCRA allow for very limited circumstances under which the late filing of a petition will be excused. 42 Pa.C.S.A. § 9545(b)(1). To invoke an exception, a

petition must allege and the petitioner must prove:

>  (i)   the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

>  (ii)   the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

>  (iii)   the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S.A. § 9545(b)(1)(i)-(iii).   Additionally, a petitioner asserting a timeliness exception must file a petition within sixty (60) days of the date the claim could have been presented.  42 Pa.C.S.A. § 9545(b)(2).  "As such, when a PCRA petition is not filed within one year of the expiration of direct review, or not eligible for one of the three limited exceptions, or entitled to one of the exceptions, but not filed within 60 days of the date that the claim could have been first brought, the trial court has no power to address the substantive merits of a petitioner's PCRA claims."  *Commonwealth v. Gamboa-Taylor*, 562 Pa. 70, 77, 753 A.2d 780, 783 (2000).

When the exception asserted is Section 9545(b)(1)(iii), the 60-day rule runs from the date of the germane decision.  *Commonwealth v. Chambers*, 35 A.3d. 34 (Pa.Super. 2011), *appeal denied*, 616 Pa. 625, 46 A.3d 715 (2012).  Subsection (iii) of Section 9545 requires a petitioner to

prove "there is a 'new' constitutional right and that the right 'has been held' by 'that court' to apply retroactively." ***Commonwealth v. Abdul-Salaam***, 571 Pa. 219, 226, 812 A.2d 497, 501 (2002). "[T]he language 'has been held' in 42 Pa.C.S. § 9545(b)(1)(iii) means that a retroactivity determination must exist **at the time that the petition is filed**." ***Id.*** at 228, 812 A.2d at 502 (emphasis added). A mere clarification of existing law, however, does not constitute a new set of rules. ***Id.*** at 229, 812 A.2d at 503.

In ***Miller***, the United States Supreme Court said: "[C]hildren are constitutionally different from adults for sentencing purposes." ***Miller, supra*** at ___, 132 S.Ct. at 2458, 183 L.Ed.2d at ___. The ***Miller*** Court recognized these differences lead to a "diminished culpability and greater prospects for reform" for juvenile offenders. ***Montgomery v. Louisiana***, ___ U.S. ___, 2016 WL 280758 *12 (filed January 25, 2016, as revised on January 27, 2016) (quoting ***Miller, supra*** at ___, 132 S.Ct. at 2464, 183 L.Ed.2d at ___).

> First, children have a "lack of maturity and an underdeveloped sense of responsibility," leading to recklessness, impulsivity, and heedless risk-taking. Second, children "are more vulnerable to negative influences and outside pressures," including from their family and peers; they have limited "control over their own environment" and lack the ability to extricate themselves from horrific, crime-producing settings. And third, a child's character is not as "well formed" as an adult's; his traits are "less fixed" and his actions less likely to be "evidence of irretrievable depravity."

***Montgomery, supra*** (quoting ***Miller, supra***). "'[T]he distinctive attributes

- 7 -

of youth diminish the penological justifications' for imposing [LWOP] on juvenile offenders[.]" **Montgomery , supra** (quoting **Miller, supra** at ___, 132 S.Ct. at 2465, 183 L.Ed.2d at ___). "These considerations underlay the Court's holding in **Miller** that mandatory [LWOP] sentences for children 'pos[e] too great a risk of disproportionate punishment.'" **Montgomery, supra** at *13 (quoting **Miller, supra** at ___, 132 S.Ct. at 2469, 183 L.Ed.2d at ___).

Moreover, "[a] substantive rule…forbids criminal punishment of certain primary conduct or prohibits a certain category of punishment for a class of defendants because of their status or offense." **Montgomery, supra** at *11.

> Because **Miller** determined that sentencing a child to [LWOP] is excessive for all but "the rare juvenile offender whose crime reflects irreparable corruption," it rendered [LWOP] an unconstitutional penalty for "a class of defendants because of their status"—that is, juvenile offenders whose crimes reflect the transient immaturity of youth. As a result, **Miller** announced a substantive rule of constitutional law. Like other substantive rules, **Miller** is retroactive because it "necessarily carr[ies] a significant risk that a defendant"—here, the vast majority of juvenile offenders—"faces a punishment that the law cannot impose upon him."

**Id.** at *13 (internal citations and some quotation marks omitted). Thus, **Miller** retroactively applies to cases on collateral review. **Id.** at *11.

Additionally, giving **Miller** retroactive effect does not require or overly burden the states to retry every case where a juvenile offender received mandatory LWOP. **Id.** at *16. "**Miller** requires only that there be judicial

consideration of the appropriate age-related factors set forth in that decision prior to the imposition of a sentence of [LWOP] on a juvenile." *Commonwealth v. Batts*, 620 Pa. 115, 131-32, 66 A.3d 286, 296 (2013) (citing *Miller, supra* at \_\_\_, 132 S.Ct. at 2467-68, 183 L.Ed.2d at \_\_\_).

> [A]t a minimum [the court] should consider a juvenile's age at the time of the offense, his diminished culpability and capacity for change, the circumstances of the crime, the extent of his participation in the crime, his family, home and neighborhood environment, his emotional maturity and development, the extent that familial and/or peer pressure may have affected him, his past exposure to violence, his drug and alcohol history, his ability to deal with the police, his capacity to assist his attorney, his mental health history, and his potential for rehabilitation.

*Batts, supra* at 133, 66 A.3d at 297 (quoting *Commonwealth v. Knox*, 50 A.3d 732, 745 (Pa.Super. 2012)) (citation omitted).  Thus, "the imposition of a minimum sentence taking such factors into account is the most appropriate remedy for the federal constitutional violation that occurred when a [LWOP] sentence was mandatorily applied to [a]ppellant."  *Batts, supra*.  Furthermore, "[a]llowing those offenders to be considered for parole ensures that juveniles whose crimes reflected only transient immaturity— and who have since matured—will not be forced to serve a disproportionate sentence in violation of the Eighth Amendment."  *Montgomery, supra* at *16.  In sum, *Montgomery* has clarified *Miller* with regard to its substantive law and retroactivity.  Consequently, we must also conclude that *Cunningham, supra* no longer controls in this context.  We now turn our attention to the implications arising from *Abdul-Salaam, supra* at 228, 812

- 9 -

A.2d at 502 (holding: "[T]he language 'has been held' in 42 Pa.C.S. § 9545(b)(1)(iii) means that a retroactivity determination must exist **at the time that the petition is filed**") (emphasis added).

The instant case represents an example of the unique situation implicating those PCRA petitions seeking **Miller** relief which were filed in the time gap following **Miller** but before **Montgomery**. Here, Appellant filed his current petition within 60 days of the **Miller** decision and asserted **Miller**'s substantive law as an exception to the PCRA timeliness requirements under subsection (b)(1)(iii). When Appellant filed his petition, the various jurisdictions were still trying to decide if **Miller** was available on collateral review but were doing so without the benefit of **Montgomery**. Appellant's petition was ultimately decided under **Cunningham, supra** and denied. We recognize that similar "gap" cases are in the appellate system awaiting disposition and include petitions filed later than 60 days after **Miller**.

Therefore, we now hold that the best resolution of this dilemma is to interpret **Montgomery** as making retroactivity under **Miller** effective as of the date of the **Miller** decision. In this way, we satisfy the "has been held" conditional language enunciated in **Abdul-Salaam, supra**. Because the **Montgomery** decision was needed to clarify **Miller**, however, we will use the date of the **Montgomery** decision solely to measure the 60-day rule of Section 9545(b)(2) (requiring petitioner asserting timeliness exception to file petition within 60 days of date claim could have been presented); **Gamboa-**

*Taylor, supra*. In all other respects, *Miller* remains the lodestar for substantive constitutional law on this subject such that the retroactivity determination will be deemed to have existed at the time the pending petitions were filed. Thus, we harmonize the PCRA requirements with *Montgomery*, *Miller*, and *Abdul-Salaam* and simultaneously achieve the justice this law was designed to promote.

Based on the foregoing, we hold the *Miller* rule of law "has been held" to be retroactive for purposes of collateral review as of the date of the *Miller* decision on June 25, 2012. The date of the *Montgomery* decision (January 25, 2016, as revised on January 27, 2016) will control for purposes of the 60-day rule in Section 9545(b)(2). Accordingly, we reverse the PCRA court's order, vacate Appellant's judgment of sentence, and remand for resentencing in accord with *Batts, supra*.

Order reversed; case remanded for resentencing. Jurisdiction is relinquished.

Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/9/2016

- 11 -