J-S63037-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| JEFFRY MCBRIDE | |
| Appellant | No. 2187 EDA 2015 |

Appeal from the PCRA Order June 26, 2015
in the Court of Common Pleas of Philadelphia County Criminal Division
at No(s): CP-51-CR-0013114-2007

BEFORE: FORD ELLIOTT, P.J.E., SHOGAN, J., and FITZGERALD,[*] J.

MEMORANDUM BY FITZGERALD, J.:                    **FILED JANUARY 25, 2017**

Appellant, Jeffry McBride, appeals from the order entered in the Philadelphia County Court of Common Pleas denying his first petition filed pursuant to the Post Conviction Relief Act[1] ("PCRA"). Appellant contends trial counsel was ineffective and that his mandatory sentence of life without parole ("LWOP") is unconstitutional under *Miller v. Alabama*, 132 S. Ct. 2455 (2012) and *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016). We affirm in part, reverse in part, vacate Appellant's judgment of sentence, and remand for resentencing.

In its opinion, the PCRA court summarizes the relevant facts of this case as follows:

---

[*] Former Justice specially assigned to the Superior Court.

[1] 42 Pa.C.S §§ 9541-9546.

On April 21, 2007, approximately twenty (20) to fifty (50) people were in the Kenderton Elementary playground. Demond Brown (decedent/victim, also identified on the record as "Demond") had recently finished a game of basketball and was standing on the sideline. The decedent's cousin, Anthony Harris (also identified on the record as "Tony"), and best friend, Hassan Durant, were standing on the basketball court.

Armel Baxter and [Appellant] were in the backseat of their friend Rachel Marcelis' car, driving to their friend Daryl Mack's (also identified on the record as "Mack") aunt's house. Either, Baxter or [Appellant] said they saw someone on the playground and told Rachel Marcelis to go back so they could be sure. Rachel Marcelis drove around the block, and Baxter and [Appellant] exited the car.

Anthony Harris and Hassan Durant saw Baxter and [Appellant] enter the playground with 'hoodies' on. People on the playground noticed Baxter and [Appellant] because both men were wearing hoodies on a very hot day. The decedent turned around, noticed Baxter and [Appellant], and began to run. Baxter and [Appellant] began shooting, and continued to shoot as they walked together side by side. The decedent ran in a "zigzag" pattern towards the 15th Street exit. The decedent stumbled out of the playground and fell in the middle of the street.

Baxter and [Appellant] ran out of the playground, and headed east on Ontario Street, then south on 15th Street. Rachel Marcelis saw Baxter and [Appellant] running in her direction, and let them back in her car. While in the car, Rachel Marcelis heard Baxter and [Appellant] talking about how [Appellant's] gun did not work and he could "not get any rounds off". When they arrived at Daryl Mack's aunt's house, Rachel Marcelis asked [Appellant] "if that was the person who shot De-Nyce." [Appellant] answered "Yes." After they left the house, Rachel Marcelis, Baxter and [Appellant] drove to Wilkes-Barre for the weekend, but only Rachel Marcelis returned the following Monday.

An arrest warrant was issued for both Baxter and [Appellant] on May 4, 2007. [Appellant] was arrested in Wilkes-Barre on May 7, 2007, after police were informed of

his outstanding warrant. Baxter was found at a motel in Wilkes-Barre on July 10, 2007 . . . .

PCRA Ct. Op., 10/21/15, at 2-3.

A jury convicted Appellant on February 5, 2009, of first-degree murder[2], criminal conspiracy[3], and possessing an instrument of crime[4] ("PIC"). That same day, the court sentenced Appellant to LWOP for murder and concurrent sentences of ten to twenty years' imprisonment and one to two years' imprisonment for conspiracy and PIC, respectively. This Court affirmed Appellant's judgment of sentence on March 22, 2010, and our Supreme Court denied allowance of appeal on September 16, 2010. **See Commonwealth v. McBride**, 440 EDA 2009 (Pa. Super. March 22, 2010), *appeal denied*, 163 EAL 2010 (Pa. Sept. 16, 2010).

On April 14, 2011, Appellant timely filed his first PCRA petition *pro se*. The PCRA court appointed counsel on December 19, 2011. PCRA counsel subsequently filed several amended petitions, which raised Appellant's claims of trial counsel's ineffectiveness and the constitutionality of his LWOP sentence pursuant to **Miller**. The PCRA court dismissed without a hearing Appellant's claims regarding **Miller** and trial counsel's failure to call several character witnesses at trial. However, the PCRA court ultimately held an

---

[2] 18 Pa.C.S. § 2502(a).

[3] 18 Pa.C.S. § 903(a)(1).

[4] 18 Pa.C.S. § 907(a).

evidentiary hearing on Appellant's claims regarding trial counsel's failure to call several exculpatory witnesses at trial and to cross-examine Rachel Marcelis on her immunity agreement. The PCRA court denied Appellant's petition on June 26, 2015. Appellant timely filed a notice of appeal on July 9, 2015, and complied with the court's order to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Appellant raises the following issues for our review:

I. The PCRA Court erred for failing to grant PCRA relief because trial counsel was ineffective for failing to investigate, interview, and call Darryl Mack, Stephan Studivant, Zan'ea Jones, Ikenia Harris and Deborah McBride, who would be exculpatory eyewitnesses at trial.

II. The PCRA Court erred for failing to grant PCRA relief because trial counsel was ineffective for failing to investigate, interview, and call Kyle Carter, Derrick McMillan, Gregory Blackmon, Shawn Lowry, Theresa Brown, Tyrone Lewis, Malik Wooden and McCoy Matthews and the PCRA judge failed to grant an evidentiary hearing for these witnesses.

III. The PCRA Court erred for failing to grant PCRA relief because trial counsel was ineffective because he received the Commonwealth's Petition for Immunity and the Order for Immunity and failed to cross-examine Rachel Marcelis concerning this favorable treatment by the Commonwealth.

IV. The PCRA Court erred for failing to grant PCRA relief because Appellant's sentence of mandatory [LWOP] is "cruel punishment" under Article 1, §§ 1, 9, and 13 of the Pennsylvania Constitution and "cruel and unusual punishment" under the Eighth and Fourteenth Amendments to the U.S. Constitution.

V. The PCRA Court erred for failing to grant PCRA relief because Appellant's sentence of mandatory sentence of

- 4 -

[LWOP] is unconstitutional under both Article 1, §§ 1, 9, and 13 of the Pennsylvania Constitution and under the Eighth and Fourteenth Amendments to the U.S. Constitution because two classes of prisoners sentenced to mandatory [LWOP] are treated differently.

VI. The Pennsylvania Code therefore does not establish a constitutional sentence for first degree murder committed by a juvenile. It would violate [A]ppellant's rights under the *ex post facto* clause to inflict "punishments, where the party was not, by law, liable to any punishment" or to inflict "greater punishment, than the law annexed to the offense.["] **Stogner v. California**, 539 U.S. 607, 612 (2003).

VII. The PCRA Court erred for failing to grant PCRA relief because **Miller v. Alabama**, 132 S. Ct 2455 (2012), applies retroactively to . . . [A]ppellant who has exhausted his appeal rights and is proceeding under the [PCRA] because: (1) **Miller**'s companion case, **Jackson v. Hobbs**, 132 S. Ct. 548 (2011) was decided on collateral review and (2) cases from both strands of precedent relied upon by the Court in **Miller** have been applied retroactively.

Appellant's Brief at 3-4.

We address Appellant's issues regarding trial counsel's ineffectiveness together. Appellant argues trial counsel was ineffective for failing to investigate, interview, and call several character witnesses and exculpatory witnesses at trial. Specifically, Appellant claims he submitted to trial counsel a list of several eyewitnesses who were available to testify that Appellant was not involved in decedent Brown's shooting. Appellant alleges trial counsel's failure to call these witnesses prejudiced Appellant and denied him a fair trial. Moreover, Appellant contends trial counsel failed to call witnesses who were willing to testify to Appellant's reputation for

- 5 -

peacefulness. Appellant further claims the PCRA court erred in failing to conduct an evidentiary hearing on Appellant's claim regarding these character witnesses. Additionally, Appellant argues trial counsel was ineffective for failing to cross-examine Rachel Marcelis regarding her immunity. Appellant maintains Rachel Marcelis received favorable treatment from the Commonwealth in exchange for her testimony against Appellant. Appellant concludes he is entitled to a new trial. We disagree.

Our standard of review of the denial of a PCRA petition is limited to examining whether the evidence of record supports the court's determination and whether its decision is free of legal error. **Commonwealth v. Conway**, 14 A.3d 101 (Pa. Super. 2011). This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings. **Commonwealth v. Boyd**, 923 A.2d 513 (Pa. Super. 2007). We give no such deference, however, to the court's legal conclusions. **Commonwealth v. Ford**, 44 A.3d 1190, 1194 (Pa. Super. 2012). Traditionally, credibility issues are resolved by the trier of fact who had the opportunity to observe the witnesses' demeanor. **Commonwealth v. Abu-Jamal**, 720 A.2d 79, 99 (Pa. 1998), *cert. denied*, 120 S. Ct. 41 (1999). Where the record supports the PCRA court's credibility resolutions, they are binding on this Court. **Id.**

Nevertheless, "a PCRA petitioner is not automatically entitled to an evidentiary hearing. We review the PCRA court's decision dismissing a

petition without a hearing for an abuse of discretion." ***Commonwealth v. Miller***, 102 A.3d 988, 992 (Pa. Super. 2014) (citation omitted). Further, when the PCRA court denies relief without an evidentiary hearing, this Court must examine each of the issues raised in light of the record to determine whether the PCRA court erred in concluding there were no genuine issues of material fact. ***Id.*** (citation omitted).

> [C]ounsel is presumed to have provided effective representation unless the PCRA petitioner pleads and proves that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable basis for his or her conduct; and (3) [a]ppellant was prejudiced by counsel's action or omission. To demonstrate prejudice, an appellant must prove that a reasonable probability of acquittal existed but for the action or omission of trial counsel. A claim of ineffective assistance of counsel will fail if the petitioner does not meet any of the three prongs. Further, a PCRA petitioner must exhibit a concerted effort to develop his ineffectiveness claim and may not rely on boilerplate allegations of ineffectiveness.

***Commonwealth v. Perry***, 959 A.2d 932, 936 (Pa. Super. 2008) (quotation marks and citations omitted).

"In order to prevail on a claim of ineffectiveness for failing to call a witness, a defendant must prove, in addition to meeting the three [ineffectiveness] requirements, that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew or should have known of the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the witness's testimony was so prejudicial as to have denied him a fair trial." ***Commonwealth v. Walls***,

993 A.2d 289, 302 (Pa. Super. 2010) (quoting **Commonwealth v. Wright**, 961 A.2d 119, 155 (Pa. 2008)).

Instantly, the PCRA court addressed Appellant's ineffectiveness claims as follows:

1. <u>Failing to Call Darryl Mack, Stephan Studivant, Zan'ea Jones, Ikenia Harris, and Deborah McBride</u>

[Appellant] first asserts that trial counsel was ineffective for failing to "investigate, interview and call" Darryl Mack, Stephan Studivant, Zan'ea Jones, Ikenia Harris, and Deborah McBride as exculpatory witnesses at trial. This claim is without merit. . . . Here, the evidence presented at the hearing clearly established that trial counsel, Michael Wallace, was not ineffective as he had a reasonable basis for not calling the above witnesses to testify on [Appellant's] behalf.

Regarding witness Darryl Mack, [Appellant] alleged that Mack would have testified at trial that he was present with Rachel Marcelis at the time of the shooting, that Mack was driving—not Marcelis, and that Marcelis was heavily under the influence of drugs. At the PCRA hearing, Mr. Wallace testified that, after questioning Mack, he determined that Mack's testimony would not be helpful at trial. Mr. Wallace also testified that he had information that what Mack was saying was not truthful, so that his testimony at trial would be false. Finally, Mr. Wallace testified that he consulted with [Appellant] regarding Mack's testimony and [Appellant] agreed to not call Mack at trial. The [PCRA c]ourt found Mr. Wallace's testimony to be credible and that Mr. Wallace's belief that Mack was not helpful and would lie on the stand was a reasonable basis for not calling Mack at trial. Because this finding is supported by the record, [Appellant] cannot show that [trial] counsel's actions lacked a reasonable basis. Therefore, the [PCRA c]ourt did not err in dismissing [Appellant's] claim of [trial] counsel['s] ineffectiveness for failing to call Mack at trial.

Regarding witness Stephan [Studivant], [Appellant] alleged that [Studivant] was present at the scene of the

shooting, that he could not see the shooters['] faces as they were concealed by hoodies, but that he heard Anthony Harris inform police that Malik Ware was the shooter. Mr. Wallace testified at the PCRA hearing that [Studivant] told Wallace's investigator that he was not even at the scene of the shooting, and only later claimed to have been a witness. The [PCRA c]ourt found Mr. Wallace's testimony to be credible and that not presenting fabricated testimony was a reasonable basis for not calling [Studivant] to testify at trial. As [Appellant] cannot show that [trial] counsel's actions lacked a reasonable basis, the [PCRA c]ourt did not err in dismissing [Appellant's] claim of [trial] counsel['s] ineffectiveness for failing to call [Studivant] at trial.

Regarding witnesses Zan'ea Jones, Ikenia Harris, and Deborah McBride, [Appellant] sought to establish through these witnesses that Rachel Marcelis had animosity towards [Appellant] stemming from her failed relationship with [Appellant's] brother and because [Appellant] took advantage of her. [Appellant] alleged that this evidence would have demonstrated that Marcelis was biased against [Appellant] and therefore incredible. However, at the PCRA hearing, Mr. Wallace testified that he believed that none of these witnesses would have supported an argument that Marcelis was biased against [Appellant]. Jones, Harris, and McBride were all family members of [Appellant]. Wallace testified that all three of these witnesses were close with Marcelis, that Marcelis ate with them, that Marcelis stayed overnight with them, and that all of them partied together as recently as the very night before the shooting. Therefore, it was Wallace's view that these witnesses would have established a close relationship among Marcelis, [Appellant] and [Appellant's] family, rather than any bad feelings that would have caused Marcelis to be biased. As [trial] counsel had a reasonable basis for not calling the above three women, the [PCRA c]ourt did not err in dismissing [Appellant's] claim of [trial] counsel['s] ineffectiveness.

2. <u>Failing to Call Kyle Carter, Derrick McMillan, Gregory Blackmon, Shawn Lowry, Theresa Brown, Tyrone Lewis, Malik Wooden, and McCoy Matthews</u>

[Appellant] next asserts that trial counsel was ineffective for failing to investigate, interview, and call Kyle Carter, Derrick McMillan, Gregory Blackmon, Shawn Lowry, Theresa Brown, [Tyrone] Lewis, Malik Wooden, and McCoy Matthews at trial and that the [PCRA c]ourt erred in failing to grant an evidentiary hearing on these witnesses. This claim is without merit.

Regarding Kyle Carter, [Appellant] alleged that Carter would have testified that he was present at the shooting, and that he heard "Tone" (Anthony Harris) say that Malik Ware, not [Appellant], shot [decedent] Brown. However, the record establishes that, while Carter was subpoenaed to appear at trial, Carter was not present in court when he would have been called to testify. While Wallace attempted to request a continuance to attempt to compel Carter to appear, the trial judge would not agree to a continuance for that purpose. The trial judge's decision to refuse the continuance request was upheld by the Superior Court on [Appellant's] direct appeal. As Carter failed to appear in court, despite having been properly subpoenaed, and since the trial court refused to continue the case to allow further efforts to secure his appearance, Carter was unavailable to testify on [Appellant's] behalf. Therefore, [Appellant's] claim of [trial] counsel's ineffectiveness for failing to call Carter at trial is without arguable merit. Accordingly, the [PCRA c]ourt did not err in denying [Appellant's] claim without an evidentiary hearing.

Regarding witness Derrick McMillan, [Appellant] alleged that McMillan would testify that [Appellant] "did not have a reputation for fighting or shooting." At trial, counsel stipulated that five different family members would testify at trial that [Appellant's] reputation "for being peaceful and nonviolent [was] excellent." Because McMillan's testimony regarding [Appellant's] character would have been cumulative, merely repeating the stipulated testimony of five other character witnesses, [trial] counsel cannot be ineffective for not calling him as a witness. Therefore, the [PCRA c]ourt did not err in failing to grant an evidentiary hearing on this claim.

Regarding Gregory Blackmon, [Appellant] alleged that Blackmon would have testified that [decedent] Brown was

- 10 -

shot by individuals who were taller and slimmer than [Appellant]. As with witness Kyle Carter, . . . Blackmon was subpoenaed for trial but failed to appear, and the trial judge refused to continue the case to allow further efforts to secure his appearance. For the reasons stated above regarding Carter, [Appellant's] claim regarding witness Blackmon was properly rejected without an evidentiary hearing.

Regarding Shawn Lowry, [Appellant] alleged that Lowry would testify that he "had knowledge of who was present on the playground when the shooting took place." However, [Appellant] did not assert anywhere in his Amended Petition how this testimony would have been relevant or exculpatory. Indeed, [Lowry's] statement to police . . . does not provide any reason to believe that [Lowry] saw the actual shooting or could testify that [Appellant] did not shoot [decedent] Brown. Moreover, the record demonstrates that both trial counsel and counsel for co-defendant Baxter attempted to locate [Lowry], but that these attempts were unsuccessful and [Lowry] never appeared at trial. Accordingly, as [Appellant] failed to aver the existence of evidence that could establish that he was prejudiced by the lack of [Lowry's] testimony, and since the record demonstrates that [Lowry] was unavailable, [trial] counsel was not ineffective for failing to call him at trial.

Regarding Theresa Brown, [Appellant] alleged that [Theresa] Brown would have testified that she saw "two males wearing light colored hoodies and the 'hoodies' were up." As with [Lowry], . . . [Appellant] does not allege that this testimony would, in any way, exculpate [Appellant] or provide any additional, relevant testimony. Moreover, [Appellant] cannot demonstrate that he was prejudiced by the lack of this testimony, since both Hassan Durant and Anthony Harris both testified that the shooters were wearing hoodies, with the hoods up, but that they could see enough of [Appellant's] face to identify him as a shooter. Harris additionally testified that he saw [Appellant's] face before [Appellant] raised the hood. As [Appellant] could not have been prejudiced by the lack of [Theresa] Brown's testimony, [Appellant] cannot establish

that counsel was ineffective for failing to call [her] to testify at trial.

Regarding Tyrone Lewis, [Appellant] alleged that Lewis "had knowledge of who was present on the playground when the shooting took place." As with [Lowry], . . . [Appellant] does not allege that this testimony would, in any way, exculpate [Appellant] or provide any additional, relevant testimony. Further, the record indicates that both trial counsel and counsel for co-defendant Baxter attempted to locate Lewis, but that these attempts were unsuccessful and Lewis never appeared at trial. Accordingly, as [Appellant] failed to aver the existence of evidence that could establish that he was prejudiced by the lack of [Lowry's] testimony, and since the record demonstrates that [Lowry] was unavailable, counsel was not ineffective for failing to call him at trial.

Regarding Malik Wooden, [Appellant] alleged that Wooden would have testified that one of the two shooters "had a dark complexion and this was not consistent with [Appellant] or his co-defendant Armel Baxter." [Appellant] fails to demonstrate how this additional testimony would have exculpated [him]. Even assuming arguendo that [Appellant's] complexion could not properly be described as "dark," Wooden did not describe the complexion of both shooters. Moreover, . . . [Appellant] was identified by two individuals, one of whom testified that he saw [Appellant] before [he] covered his face with his hoodie. Further, [Appellant] failed to allege anywhere that Wooden was available to testify on his behalf. As [Appellant] was not prejudiced by the lack of Wooden's testimony, and as there is no reason to believe that Wooden was available to testify at trial, [trial] counsel was not ineffective for failing to call Wooden as a witness.

Regarding McCoy Matthews, [Appellant] asserts that Matthews "had knowledge of who was present on the playground when the shooting took place." For the reasons set forth above for witnesses Lowry and Lewis, [Appellant] fails to establish how Matthews['] testimony would have been relevant or exculpatory at trial. [Matthews'] statement to police . . . does not provide any reason to believe that Matthews saw the actual shooting or

- 12 -

could testify that [Appellant] did not shoot [decedent] Brown. Further, [Appellant] never alleges that Matthews was available to testify on his behalf. As [Appellant] was not prejudiced by the lack of Matthews' testimony, and as there is no reason to believe that Matthews was available to testify at trial, [trial] counsel was not ineffective for failing to call Matthews as a witness.

3. Failing to Cross-Examine Rachel Marcelis Regarding Immunity

[Appellant] next asserts that trial counsel was ineffective for failing to cross-examine Rachel Marcelis concerning the Commonwealth's Petition for Immunity and the Order for Immunity which counsel received prior to trial. This claim is without merit.

At trial, defense counsel conducted an extensive cross-examination of Marcelis concerning her involvement in the playground shooting. However, Mr. Wallace did not question Marcelis concerning the immunity granted to her by the Commonwealth. At the PCRA hearing, Mr. Wallace testified that he was fully aware of the immunity, but declined to question [Marcelis] about it since he believed it would hurt [Appellant's] case. The [PCRA c]ourt found Mr. Wallace's testimony to be credible. Under the Commonwealth's theory, Marcelis drove [Appellant] to and from the murder, and therefore could have been charged as an accomplice. Under the defense theory, Marcelis and [Appellant] were in a car together, but had nothing to do with the murder. Accordingly, Marcelis only had criminal exposure if the Commonwealth's contentions were correct. Bringing out the immunity agreement under those circumstances could tend to support the Commonwealth's version of the facts. Under these circumstances, Wallace's strategic decision to not bring out the immunity had a reasonable basis. Therefore, [trial] counsel was not ineffective for choosing to omit this testimony.

PCRA Ct. Op. at 5-12 (citations and footnotes omitted). We agree with the

PCRA court's conclusions. Furthermore, regarding the immunity claim,

Appellant has failed to demonstrate he was prejudiced by trial counsel's

- 13 -

failure to cross-examine Marcelis on her immunity agreement. *See Perry*, 959 A.2d at 936. At trial, Hassan Durant and Anthony Harris both testified to seeing Appellant and co-defendant shoot decedent Brown. *See* N.T. Trial, 1/29/09, at 76-77; N.T. Trial, 1/30/09, at 4-6. Thus, Appellant has not proven there is a reasonable probability the outcome of his trial would have been different but for trial counsel's alleged ineffectiveness. *See Perry*, 959 A.2d at 936. Accordingly, Appellant's claims of trial counsel's ineffectiveness merit no relief, and we affirm the PCRA court's dismissal of these claims.

Appellant's remaining issues challenge his LWOP sentence; therefore, we will address them together. Appellant argues his mandatory sentence of LWOP constitutes "cruel and unusual punishment" under the Pennsylvania and United States Constitutions because he was a juvenile when the crimes were committed. Appellant contends he was seventeen-years-old at the time of the offense and, therefore, his mandatory LWOP sentence is unconstitutional pursuant to *Miller* and *Montgomery*. Appellant concludes he is entitled to resentencing under *Miller* and *Montgomery*. We agree.

On January 25, 2016, while the instant appeal was pending,[5] the United States Supreme Court issued its decision in *Montgomery* and held, "*Miller* announced a substantive rule of constitutional law. Like other substantive rules, *Miller* is retroactive[.]" *Montgomery*, 136 S. Ct. at 734.

---

[5] Appellant filed his *pro se* PCRA petition on April 14, 2011, prior to the United States Supreme Court's decision in *Miller* on June 25, 2012.

Thereafter, this Court issued its decision in **Commonwealth v. Secreti**, 134 A.3d 77 (Pa. Super. 2016) and held the decision in **Montgomery** renders **Miller** retroactive "effective as of the date of the **Miller** decision." **Secreti**, 134 A.3d at 82. Therefore, pursuant to the decisions in **Miller**, **Montgomery**, and **Secreti**, we reverse the PCRA court's order denying relief on this claim, vacate Appellant's judgment of sentence, and remand for resentencing.

Order affirmed in part and reversed in part. Judgment of sentence vacated. Remand for resentencing. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/25/2017