J-S63016-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: SECRETI, JUSTIN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: JUSTIN SECRETI | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 117 WDA 2018 |

Appeal from the Amended Order August 30, 2017
In the Court of Common Pleas of Washington County Criminal Division at
No(s):  CP-63-MD-0001637-1994

BEFORE:   OTT, J., MURRAY, J., and STEVENS*, P.J.E.

MEMORANDUM BY MURRAY, J.:                     **FILED OCTOBER 30, 2018**

Justin Secreti (Appellant) appeals from the amended order entered following a re-sentencing hearing pursuant to ***Miller v. Alabama***, 567 U.S. 460 (2012).  After careful review, we affirm.

A prior panel of this Court previously recited the facts and a partial procedural history of Appellant's case:

> Appellant was born on June 23, 1977.  On August 22, 1993, when he was sixteen years old, Appellant and two co-defendants committed a home invasion, and then robbed and murdered the victims (husband and wife) in their home.  Appellant pled guilty on November 1, 1995, to two counts each of first-degree murder, aggravated assault, and robbery, and one count each of burglary, theft by unlawful taking or disposition, receiving stolen property, and criminal conspiracy.[1]   On January 5, 1996, the court sentenced Appellant to automatic life imprisonment without the possibility of parole on each murder offense, to be served

---

[1] 18 Pa.C.S.A. §§ 2502(a), 2702(a)(1), 3701(a)(1)(i), 3502, 3921, 3925, 903.

---

* Former Justice specially assigned to the Superior Court.

concurrently, with no further penalties on the remaining offenses. Appellant did not file a direct appeal.

Appellant timely filed his first PCRA petition *pro se* on January 3, 1997. The PCRA court appointed counsel, who filed an amended petition. On April 9, 1999, the PCRA court conducted a hearing on Appellant's amended petition, which the court denied on June 18, 1999. This Court affirmed, and our Supreme Court denied allowance of appeal on April 3, 2001. *See Commonwealth v. Secreti*, 760 A.2d 433 (Pa.Super.2000), *appeal denied*, 565 Pa. 642, 771 A.2d 1282 (2001). Appellant filed a second PCRA petition *pro se* on April 29, 2005, which the PCRA court ultimately denied on February 21, 2006. This Court affirmed, and our Supreme Court denied allowance of appeal on February 28, 2007. *See Commonwealth v. Secreti*, 913 A.2d 947 (Pa.Super.2006), *appeal denied*, 591 Pa. 700, 918 A.2d 745 (2007).

*Commonwealth v. Secreti*, 134 A.3d 77, 78-79 (Pa. Super. 2016).

On August 15, 2012, Appellant filed his third PCRA petition, *pro se*. Appellant, through appointed counsel, filed an amended petition on December 1, 2014, alleging that mandatorily sentencing a juvenile to a term of life imprisonment without the possibility of parole was unconstitutional, as held by the United States Supreme Court in *Miller*. *See Miller*, 567 U.S. at 465 ("We therefore hold that mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'"). The PCRA court denied his petition, concluding that *Miller* was not to be applied retroactively on collateral review, per *Commonwealth v. Cunningham*, 81 A.3d 1 (Pa. 2013). Trial Court Opinion, 5/1/18, at 2. Appellant appealed the PCRA court's decision on December 11, 2014.

While Appellant's appeal was pending, the United States Supreme Court in ***Montgomery v. Louisiana***, 136 S.Ct. 718 (2016), held that ***Miller*** announced a substantive rule of law that is to be applied retroactively on collateral review. ***See Montgomery***, 136 S.Ct. at 736 ("The Court now holds that ***Miller*** announced a substantive rule of constitutional law."). Consequently, this Court vacated Appellant's sentence and remanded to the trial court for a hearing and re-sentencing. ***Secreti***, 134 A.3d at 83.

The trial court convened a hearing on August 30, 2017. At both homicide counts, the trial court re-sentenced Appellant to 35 years to life imprisonment. Amended Order, 8/30/17. The trial court imposed the sentences concurrently and gave Appellant credit for time served from the date of his arrest on August 31, 1994. ***Id.*** Appellant received no further penalties for his additional convictions. ***Id.***

Appellant filed a post-sentence motion on September 8, 2017, which was denied by operation of law on January 1, 2018. This timely appeal followed on January 18, 2018. Both the trial court and Appellant have complied with Pennsylvania Rule of Appellate Procedure 1925.

On appeal, Appellant presents the following issues for review:

1. Whether the sentencing court erred in imposing an excessive and disproportionate sentence of 35 years to life solely based on the seriousness of the offense and to punish the [Appellant] where it found that [Appellant] had been a model prisoner with the least significant history of misconducts it had seen in its entire judicial career, was no longer a danger to society, that his age and dysfunctional family background contributed to his role in the crimes, [Appellant] showed extreme remorse for his role in the

crimes, and the uncontradicted evidence was that [Appellant] had been rehabilitated?

2. Whether the sentencing court erred in finding that [Appellant] took more of an active role in the homicides than did those individuals in the cases cited by counsel during his argument who received less than 35 year minimums where the evidence showed that [Appellant] placed one victim in a sleeper hold but his co-defendant stabbed and bludgeoned the victims to death and [Appellant's] culpability was more akin to that of second degree murder?

3. Whether the sentencing court illegally sentenced [Appellant] and violated his rights under the Eighth Amendment and Article 1, Section 13 of the Pennsylvania Constitution by imposing a disproportionate 35-year minimum sentence solely to punish the [Appellant] where no other penalogical purpose existed to require [Appellant] to serve twelve more years of incarceration before becoming eligible for parole as he has been successfully rehabilitated and is not a danger to society?

4. Whether the court's sentence is illegal and violates due process as it imposed a 35-year minimum sentence without any statutory authority for such a sentence?

5. Whether, to the extent that the sentencing court purported to sentence [Appellant] under 18 Pa.C.S. § 1102, that statute was unconstitutional and not severable form the parole statute, 61 Pa.C.S. § 6137(a)(1), rendered illegal by *Miller v. Alabama*, 132 S.Ct. 2455 (2012), and *Montgomery v. Louisiana*, 132 S.Ct. 2455 (2012), [sic] and therefore [Appellant's] sentence is illegal and is in violation of due process?

6. Whether the imposition of a maximum term of life, regardless of the minimum term, fails to reflect individualized sentencing, is an abdication of judicial responsibility, ignores the *Miller* mandate and results in an illegal sentence?

Appellant's Brief at 4-5.

In his first, second, third, and sixth issues, Appellant challenges the discretionary aspects of his sentence. "The right to appellate review of the

discretionary aspects of a sentence is not absolute, and must be considered a petition for permission to appeal." *Commonwealth v. Buterbaugh*, 91 A.3d 1247, 1265 (Pa. Super. 2014), *appeal denied*, 104 A.3d 1 (Pa. 2014). "An appellant must satisfy a four-part test to invoke this Court's jurisdiction when challenging the discretionary aspects of a sentence." *Id.* We conduct this four-part test to determine whether:

> (1) the appellant preserved the issue either by raising it at the time of sentencing or in a post[-]sentence motion; (2) the appellant filed a timely notice of appeal; (3) the appellant set forth a concise statement of reasons relied upon for the allowance of appeal pursuant to Pa.R.A.P. 2119(f); and (4) the appellant raises a substantial question for our review.

*Commonwealth v. Baker*, 72 A.3d 652, 662 (Pa. Super. 2013) (citation omitted), *appeal denied*, 86 A.3d 231 (Pa. 2014). "A defendant presents a substantial question when he sets forth a plausible argument that the sentence violates a provision of the sentencing code or is contrary to the fundamental norms of the sentencing process." *Commonwealth v. Dodge*, 77 A.3d 1263, 1268 (Pa. Super. 2013) (quotations and citations omitted), *appeal denied*, 91 A.3d 161 (Pa. 2014).

Here, Appellant has complied with the first three prongs of this test to invoke our jurisdiction by raising his discretionary sentencing claims in a timely post-sentence motion, filing a timely notice of appeal, and including in his appellate brief a Rule 2119(f) concise statement. *See* Appellant's Brief at 15-23. Therefore, we must determine whether Appellant's discretionary aspects of sentencing claims present substantial questions for our review.

Because Appellant's first, third, and sixth issues raise similar sentencing claims, we address them together. For those issues, Appellant argues that the trial court erred in sentencing him because it fashioned a sentence that was excessive, that "disregarded [Appellant's] rehabilitation, his rehabilitative needs, and that continued incarceration was not necessary for protection of the public," and "fail[ed] to reflect individualized sentencing[.]" Appellant's Brief at 18, 31-35, 49. These arguments present a substantial question for our review. *See Commonwealth v. Derry*, 150 A.3d 987, 992 (Pa. Super. 2016) ("An averment that the trial court failed to consider relevant sentencing criteria, including the protection of the public, the gravity of the underlying offense and the rehabilitative needs of Appellant, as 42 [Pa.C.S.A.] § 9721(b) requires[,] presents a substantial question for our review[.]").

In his second issue, Appellant argues that his sentence is excessive because the trial court wrongly found that he played an active role in the homicides. Appellant argues that his limited role in the homicides should have been a mitigating factor at sentencing. This claim also raises a substantial question for review. *Dodge*, 77 A.3d at 1272 ("[A]n excessive sentence claim, in conjunction with an assertion that the court did not consider mitigating factors, raise[s] a substantial question."). Because Appellant has satisfied each of the criteria for invoking our review of his discretionary aspects of sentencing claims, we turn to the merits of his arguments.

The relevant standard of review is as follows:

> Sentencing is a matter vested in the sound discretion of the sentencing judge. The standard employed when reviewing the discretionary aspects of sentencing is very narrow. We may reverse only if the sentencing court abused its discretion or committed an error of law. A sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision. We must accord the sentencing court's decision great weight because it was in the best position to review the defendant's character, defiance or indifference, and the overall effect and nature of the crime.

*Commonwealth v. Cook*, 941 A.2d 7, 11-12 (Pa. Super. 2007) (internal quotations and citations omitted).

In Appellant's first, third, and sixth issues, he asserts that the trial court abused its discretion in fashioning his sentence.[2] Specifically, Appellant alleges that his sentence is excessive because the trial court failed to consider relevant factors in fashioning his sentence, created his sentence without regard for his full rehabilitation, imposed the sentence solely as punishment for his crimes, and failed to create an individualized sentence. Appellant's Brief at 23, 31, 49.

The relevant portion of 42 Pa.C.S.A. § 9721(b) states:

> In selecting from the alternatives set forth in subsection (a), the court shall follow the general principle that the sentence imposed

---

[2] Appellant frames his third and sixth issues as legality of sentence claims. However, substantively, these issues pertain to the discretionary aspects of his sentence. *See Commonwealth v. Caldwell*, 117 A.3d 763, 768 (Pa. Super. 2015) (*en banc*) (stating that a claim that the trial court did not consider the appropriate factors in fashioning the appellant's sentence challenges the discretionary aspects of the sentence).

should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant. . . . In every case in which the court imposes a sentence for a felony or misdemeanor . . . the court shall make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed.

*Id.* This Court has also held, "[w]hen a sentencing court has reviewed a pre[-]sentence investigation report, we presume that the court properly considered and weighed all relevant factors in fashioning the defendant's sentence." *Baker*, 72 A.3d at 663, (citing *Commonwealth v. Fowler*, 893 A.2d 758, 767 (Pa. Super. 2006)). Additionally:

[i]n imposing sentence, the trial court is required to consider the particular circumstances of the offense and the character of the defendant. The trial court should refer to the defendant's prior criminal record, age, personal characteristics, and potential for rehabilitation. However, where the sentencing judge had the benefit of a presentence investigation report, it will be presumed that he or she was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. Additionally, the sentencing court must state its reasons for the sentence on the record. 42 Pa.C.S.A. § 9721(b). The sentencing judge can satisfy the requirement that reasons for imposing sentence be placed on the record by indicating that he or she has been informed by the pre-sentencing report; thus properly considering and weighing all relevant factors.

*Fowler*, 893 A.2d at 767-68, (citing *Commonwealth v. Boyer*, 856 A.2d 149, 154 (Pa. Super. 2004)) (some internal citations omitted).

At Appellant's August 30, 2017 re-sentencing hearing, the Washington County Adult Probation Office provided the trial court with a pre-sentence investigation report. N.T., 8/30/17, at 6-8. This report was an updated

version of the one originally prepared on January 5, 1996. *Id.* at 8. The trial

court noted that the report included:

> an interview the [Appellant] gave to the [district attorney] on September 1, 1994 in the presence of his lawyer, the lead investigator, two additional troopers and [Appellant's] mother; victim impact statements, statements from the [Appellant's] mother, [and] a friend. The pre[-]sentence investigator obtained the [Appellant's] records and other relevant information from the Pennsylvania Department of Corrections.

Trial Court Opinion, 5/1/18, at 5 (unnecessary capitalization omitted).

Before imposing Appellant's sentence in open court, the trial court

commented:

> There are many, many different factors to weigh here. The Court has heard all the testimony, and I have read the packet that was previously submitted to me for review and all the letters of reference, and the positive impact that [Appellant] has had on numerous inmates, especially, were submitted and were very touching. All of these factors that the Court has to consider, you know, his age, at 16, you know, he was – the age at the time of the crime, he was 16. He was very immature. Obviously, from the testimony, he had a very traumatic childhood and he's been traumatized by the events in his life. Not given the benefit of nurturing and love that many of us have had the privilege of having as we were raised, and the chaos that his life was early on attributed to his lack of maturity and these poor decisions that he made. The crime itself cannot be understated. There's certainly – in terms of sophistication of the crime – there wasn't a sophisticated crime, there was no evidence of criminal enterprise or any, you know, long-term planning. It seemed to be a total act of senseless barbarity at the heat of the moment, but it had such a strong and lasting impact on the family of [the victims], and of the community, to have two people who were in the twilight of their years really struggling to meet the demands of old age, and [the male victim] was having some health problems and his wife was caring for him, and that they had simple pleasures in life that gave them joy, and then to have their end in such a violent and horrendous way just cannot be minimized. . . . We have the benefit at this time, however, that Judge Gladden didn't have at

that time, knowing about how is [Appellant] going to fare in prison? He really has been a model prisoner. We've had that benefit that behind bars he has been a model prisoner. He has been exemplary. Four minor misconducts is pretty much a record from what I've seen in my 23 years on the bench. So he really has been rehabilitated in terms of what the Department of Corrections can offer him. Can he continue, as he said? He admits he's a flawed individual. We're all flawed. Can he continue to improve? Absolutely. Can he continue to be of benefit to others in his surroundings? Absolutely. I don't believe that he poses a threat when he would be released, but the question is when he should be released? You know, if there was some change in circumstances, I would be willing to look at something like 23 years, but when there's two victims here, and two elderly victims, that were just brutalized in their final hours, there's no way I can – I think any less sentence of 35 years to life would depreciate the seriousness of that. I just cannot do that for their memory, for their idea – of course, at the time, everyone who thought it was life meant life, and it didn't, and I think that's a really positive step in our society that we recognize that juveniles make decisions without the benefit of a fully developed brain, and that they are really the product of their environment and the people around them, and that we've grown as a society and recognize that. It still doesn't mean that we just let it go at that. I believe that a sentence of 35 to life concurrent on each homicide is the appropriate sentence, and that is the sentence that I will impose.

N.T., 8/30/17, at 149-53.

Based on our review of the transcript of Appellant's re-sentencing hearing, including the trial court's remarks cited above, we conclude that the trial court considered the appropriate factors when determining Appellant's sentence. Specifically, the trial court discussed Appellant's rehabilitation, future rehabilitative needs, and whether there is a need for Appellant's continued incarceration. The trial court also indicated on the record that it reviewed Appellant's pre-sentence investigation report, as well as the entirety of the evidence presented at the hearing. Despite evidence of Appellant's

good behavior in prison and his apparent rehabilitation, the trial court ultimately, in its discretion, determined that the gravity of the crimes necessitated a 35-year minimum sentence. Thus, the record reflects that the trial court weighed the appropriate factors and properly fashioned an individualized sentence for Appellant. Accordingly, his first, third, and sixth issues are meritless.

For his second issue, Appellant argues that his sentence was excessive because "the [trial] court erred in finding that [Appellant] took more of an active role in the homicides[.]" Appellant's Brief at 27. Appellant maintains that his more limited role in the murders was a mitigating factor that necessitated a lesser sentence.

At re-sentencing, the trial court made the following factual findings as to Appellant's role in the crimes:

> The fact that [Appellant] was an active participant – I know some of these cases I've read, numerous cases of juveniles who have committed crimes, and many of these – it goes the gamut, but there are many who receive more favorable sentences because they didn't participate fully in that crime, or they were the lookout or, sort of, a more passive participant. Here, [Appellant], and many of the statements given were – you know, he owned up to it right away, but he was an active participant and the brutality of it was inflected [*sic*] by [Appellant] along with [his co-defendant].

N.T., 8/30/17, at 151. The trial court further expanded in its opinion on its determination that Appellant was an active participant:

> The Court finds . . . that [Appellant] was an active and pivotal participant in the crime and that [Appellant] continues to downplay his involvement in the murders to some extent. First and foremost, it was he that targeted the victims. He identified

- 11 -

them as old people who had money which drew the three conspirators to go to the victims' home on August 22, 1993. During the commission of the crime, he choked [the male victim] until he thought he was dead. He retrieved a knife from the kitchen for his co-defendant to use to stab [the female victim]. [Appellant] picked up the hammer to hit [the female victim]; while he said he didn't hit her with it, he had it in his hands and allowed the co-defendant to use it.

Trial Court Opinion, 5/1/18, at 9-10 (unnecessary capitalization omitted).

Importantly, we emphasize that we must "defer to the findings of fact made by the sentencing court as long as they are supported by competent evidence." *Commonwealth v. Batts*, 163 A.3d 410, 444 (Pa. 2017) ("*Batts II*") (internal citations omitted). Here, the transcript of Appellant's re-sentencing reveals that the trial court based its finding that Appellant was an active participant in the murders on competent evidence of record. For example, the record indicates that Appellant was the conspirator who specifically targeted the victims as elderly people with money, choked the male victim until he thought the victim was dead, and retrieved weapons for his co-conspirators to use on the victims. *See* Transcript of Appellant's Interview, 9/1/94. Because the trial court's finding is supported by competent evidence of record, the court did not abuse its discretion in determining that Appellant's role in the homicides was not a mitigating factor that necessitated a lesser sentence. Appellant's second issue is therefore meritless.

For his fourth and fifth issues, Appellant disputes the legality of his sentence. We are mindful in addressing these claims that "[i]ssues relating to the legality of a sentence are questions of law. Our standard of review over

such questions is *de novo* and our scope is plenary." ***Commonwealth v. Cardwell***, 105 A.3d 748, 750 (Pa. Super. 2014) (internal citation omitted). We further note:

> The scope and standard of review applied to determine the legality of a sentence are well established. If no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction. An illegal sentence must be vacated. In evaluating a trial court's application of a statute, our standard of review is plenary and is limited to determining whether the trial court committed an error of law.

***Commonwealth v. Dixon***, 161 A.3d 949, 951 (Pa. Super. 2017) (internal citation omitted).

In his fourth issue, Appellant claims that there is "no statutory authority to impose a 35-year minimum sentence and Pennsylvania courts lack common law authority to impose a sentence that does not statutorily exist." Appellant's Brief at 35. Although it is not entirely clear from Appellant's argument, Appellant appears to assert that the trial court improperly relied on Section 1102.1(a)(1) of the Pennsylvania Crimes Code in determining his minimum sentence.

The Pennsylvania Supreme Court in ***Batts II*** addressed how a sentencing court should proceed following ***Miller*** when faced with re-sentencing a juvenile offender who was originally sentenced, pre-***Miller***, to life imprisonment without the possibility of parole. Our Supreme Court explained:

> For those defendants for whom the sentencing court determines a life-without-parole sentence is inappropriate, "it is our

> determination here that they are subject to a mandatory maximum sentence of life imprisonment as required by Section 1102(a), accompanied by a minimum sentence determined by the common pleas court upon re[-]sentencing[.]"

*Batts II*, 163 A.3d at 421 (quoting *Commonwealth v. Batts*, 66 A.3d 286, 296-97 (Pa. 2013) (*Batts I*)).[3]  "The sentencing court should fashion a minimum term of incarceration using, as guidance, [S]ection 1102.1(a) of the Crimes Code." *Id.* at 484.

Appellant is correct that there is no statute that mandates a 35-year minimum sentence in his case.  The Supreme Court made clear in *Batts II*, however, that where a sentencing court determines that a sentence of life imprisonment without the possibility of parole is inappropriate for a juvenile offender who was originally sentenced to life without parole prior to *Miller*, the minimum sentence is left to the trial court's discretion on re-sentencing, using Section 1102.1 as guidance.  *Id.* at 421.

_____

[3]  In *Batts I*, the Pennsylvania Supreme Court addressed for the first time after *Miller* the sentencing of a juvenile offender convicted of first-degree murder.  Noting that the United States Supreme Court in *Miller* declined to place a "categorical ban" on life-without-parole sentences for juvenile offenders, our Supreme Court in *Batts I* held that juvenile offenders convicted of first-degree murder could be subject to a life-without-parole sentence only after the sentencing court considered the criteria outlined in *Miller*.  *Id.* at 296-99.  *Batts II* followed four years later where the Supreme Court set forth the procedure for re-sentencing juvenile offenders who were improperly sentenced to life without parole prior to *Miller*.

Section 1102.1, which the General Assembly enacted in the wake of the

*Miller* decision, sets forth the guidelines for sentencing those who commit

first-degree murder while under the age of 18:

> **(a) First degree murder.**--A person who has been convicted after June 24, 2012, of a murder of the first degree, first degree murder of an unborn child or murder of a law enforcement officer of the first degree and who was under the age of 18 at the time of the commission of the offense shall be sentenced as follows:
>
> > (1) A person who at the time of the commission of the offense was 15 years of age or older shall be sentenced to a term of life imprisonment without parole, or a term of imprisonment, the minimum of which shall be at least 35 years to life.

18 Pa.C.S.A. § 1102.1(a)(1).

Based on our Supreme Court's decision in *Batts II*, we conclude that

Appellant's 35-year minimum sentence was legal.  While Section 1102.1 is not

directly applicable to Appellant, as he pled guilty on November 1, 1995, our

Supreme Court made clear that the minimum sentence in cases such as

Appellant's is left to the trial court's discretion and that courts are to use

Section 1102.1 as guidance when re-sentencing juvenile offenders who were

originally sentenced to life without parole.  *See Batts II*, 163 A.3d at 484.

Thus, the trial court properly took into consideration Section 1102.1 when it

resentenced Appellant.  Because Appellant's sentence is legal under *Batts II*,

we find no merit to this illegal sentence claim.

In his fifth issue, Appellant argues that his sentence is illegal because

the trial court sentenced him under Section 1102 of the Pennsylvania Crimes

Code, which he asserts is unconstitutional.  Appellant contends that Section

1102, which mandates a maximum sentence of life imprisonment for juveniles who commit murder, cannot be severed from 61 Pa.C.S.A. § 6137(a)(1), which states that parole may not be granted to those serving a life sentence, which is unconstitutional as applied to juveniles under *Miller*.

Both this Court and our Supreme Court, as Appellant concedes, have rejected this claim. *Batts II* made clear that the Pennsylvania Supreme Court had "severed the prohibition against paroling an individual sentenced to serve life in prison in [S]ection 6137(a)(1) as applied to [juvenile] offenders" from the mandate of Section 1102(a) that juvenile offenders convicted of murder receive a maximum possible sentence of life imprisonment. *Commonwealth v. Seskey*, 170 A.3d 1105, 1109 (Pa. Super. 2017) (citing *Batts II*, 163 A.3d at 421). Accordingly, Appellant's fifth issue is devoid of merit.

In sum, the trial court did not abuse its discretion in sentencing Appellant, and the sentence Appellant received was legal based upon the precedent set forth in *Batts II*. Because Appellant's issues lack merit, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/30/2018

- 16 -