J-A07034-19

2019 PA Super 108

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOHN M. BLOUNT | : | |
| | : | |
| Appellant | : | No. 1278 EDA 2018 |

Appeal from the Judgment of Sentence March 26, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0124901-1990

BEFORE:   OLSON, J., DUBOW, J., and STEVENS*, P.J.E.

OPINION BY STEVENS, P.J.E.:                    **FILED APRIL 08, 2019**

Appellant, John M. Blount, appeals from the March 26, 2018, judgment of sentence entered in the Court of Common Pleas of Philadelphia County following the lower court's grant of PCRA[1] relief and resentencing of Appellant on, *inter alia*, his conviction for two counts of first-degree murder pursuant to ***Montgomery v. Louisiana***, ___ U.S. ___, 136 S.Ct. 718 (2016), which held that state courts are required to grant retroactive effect to new substantive rules of federal constitutional law, such as ***Miller v. Alabama***, 567 U.S. 460, 132 S.Ct. 2455 (2012).  ***Miller*** held unconstitutional mandatory sentences of life imprisonment without the possibility of parole for offenders, like Appellant, who were under eighteen years of age at the time of their crimes.  After a careful review, we affirm.

_____

[1] Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.

_____
*   Former Justice specially assigned to the Superior Court.

The relevant facts and procedural history are as follows: On September 28 or 29, 1989, Appellant, who was seventeen years old, shot two men in the head at close range. One of the men was a tenant in Appellant's mother's residence where Appellant also lived. After the killings, Appellant removed money and jewelry from the deceased victims, and with the help of his stepfather, moved their corpses to a basement garage. Thereafter, Appellant paid two men to remove the victims' decomposing corpses from the basement. On October 24, 1989, Appellant was arrested for the murders, and he confessed to the police that he shot both victims.

On October 29, 1990, Appellant proceeded to a jury trial and was convicted of two counts of first-degree murder, possessing an instrument of crime, and abusing a corpse. At a separate penalty hearing, with regard to the two murder convictions, the jury determined the aggravating circumstances outweighed any mitigating circumstances and fixed Appellant's penalty at death. The trial court immediately sentenced Appellant to two consecutive sentences of death.

The trial court then sentenced Appellant to one year to two years in prison for abuse of a corpse, and two and one-half years to five years in prison for possessing an instrument of crime, both to run concurrently to each other but consecutively to the sentences of death.

Appellant filed a direct appeal with the Pennsylvania Supreme Court, which affirmed Appellant's convictions but vacated his death sentences due to

erroneous instructions from the trial court pertaining to how the jury should assess aggravating and mitigating circumstances. *See Commonwealth v. Blount*, 538 Pa. 156, 647 A.2d 199 (1994). Upon remand, on July 24, 1996, the trial court resentenced Appellant to two consecutive terms of life in prison without the possibility of parole for first-degree murder, a consecutive term of two and one-half years to five years in prison for possessing an instrument of crime, and a concurrent term of one year to two years in prison for abuse of a corpse.

Appellant filed a *pro se* PCRA petition on January 9, 1997, and counsel was appointed to assist him. The PCRA court denied Appellant's PCRA petition on December 31, 1997, and Appellant did not appeal.

On March 24, 2006, Appellant filed a second *pro se* PCRA petition, and the PCRA court denied the petition on the basis it was untimely. Appellant filed an appeal, and this Court affirmed. *Commonwealth v. Blount*, 2145 EDA 2008 (Pa.Super. filed 11/10/09) (unpublished memorandum). Appellant filed a petition for allowance of appeal, which our Supreme Court denied on July 30, 2010.

On August 10, 2012, Appellant filed a third *pro se* PCRA petition, and the PCRA court denied the petition on the basis it was untimely. Appellant did not appeal.

On March 8, 2016, Appellant filed a fourth *pro se* PCRA petition in which he argued that he was entitled to relief under *Montgomery*, *supra* and

- 3 -

*Miller*, *supra*. Following the appointment of counsel and the granting of numerous continuances, the Honorable Barbara A. McDermott granted relief based on the "new constitutional right" exception to the PCRA's time-bar and, thus, vacated Appellant's July 24, 1996, judgment of sentence.

On March 26, 2018, Judge McDermott held a resentencing hearing, at the conclusion of which she imposed thirty-five years to life imprisonment for each count of first-degree murder, the sentences to run concurrently. Judge McDermott imposed no further penalty for possessing an instrument of crime or abuse of a corpse.

On April 4, 2018, Appellant filed a counseled post-sentence motion, which counsel supplemented on April 25, 2018. Following a hearing on April 26, 2018, Judge McDermott denied the post-sentence motion, and this timely appeal followed on May 3, 2018. All Pa.R.A.P. 1925 requirements have been met.

On appeal, Appellant presents the following issues in his "Statement of Questions Involved":

1. Must the sentencing judge recuse herself where the judge did not accept the sentence agreed upon by the parties?

2. Did not the sentencing court err when imposing sentence by considering matters without support in the record that were actually false, here that [Appellant] would live into his 90s and that he had desecrated the bodies of the decedents?

3. Did not the sentencing court unconstitutionally err and violate *Miller*, [*supra*], where, at the resentencing of a juvenile lifer, the court relied exclusively upon the facts of the homicide in imposing an additional six more years of incarceration beyond

the twenty-eight years already served and by doing so ignored the total rehabilitation demonstrated by [Appellant]?

4. Is not a sentence of an additional six years of incarceration beyond the twenty-eight years already served excessive where the sentencing judge agreed that the evidence established that [Appellant] was rehabilitated?

5. Is it unconstitutional to impose a mandatory lifetime parole tail on all juvenile lifers being resentenced?

Appellant's Brief at 3-4 (suggested answers omitted).

In his first issue, Appellant contends the sentencing judge, Judge McDermott, erred in failing to recuse herself from resentencing Appellant since she refused to impose the parties' negotiated sentence.[2] He complains that "the refusal of the [sentencing] judge to [accept] the stipulated sentence requires that the judge recuse herself." *Id.* In developing his argument, Appellant points to four unrelated cases involving the resentencing of juveniles who had originally been sentenced to life without the possibility of parole. Appellant notes that, in those cases, "Judge McDermott indicated that she would recuse herself if the negotiated sentence was not accepted." *Id.* Thus, Appellant reasons that "Judge McDermott knew it was legally appropriate for

_____

[2] On March 16, 2018, in anticipation of Judge McDermott granting PCRA relief and resentencing Appellant, the parties appeared briefly before Judge McDermott. At this brief hearing, the parties indicated they were in negotiations with regard to resentencing, and Judge McDermott scheduled a formal sentencing hearing for March 26, 2018. As will be discussed *infra*, the Commonwealth agreed to not contest a sentence of twenty-nine years to life imprisonment. N.T., 3/26/18, at 46.

her to recuse herself if she rejected the negotiated sentence" in the instant matter. *Id.*

The standards for recusal are well-established. ***Commonwealth v. Abu-Jamal***, 553 Pa. 485, 720 A.2d 79, 89 (1998). The party requesting recusal is required "to produce evidence establishing bias, prejudice or unfairness which raises a substantial doubt as to the jurist's ability to preside impartially." *Id.* The judge to whom a motion for recusal is addressed must make two decisions:

> [T]he jurist must first make a conscientious determination of his or her ability to assess the case in an impartial manner, free of personal bias or interest in the outcome. The jurist must then consider whether his or her continued involvement in the case creates an appearance of impropriety and/or would tend to undermine public confidence in the judiciary.

*Id.* Each judge in this Commonwealth is entitled to the presumption that, "when confronted with a recusal demand, [she has] the ability to determine whether [she] can rule impartially and without prejudice." ***Commonwealth v. Kearney***, 92 A.3d 51, 60 (Pa.Super. 2014). Her ruling will not be overturned but for an abuse of discretion. *Id.*

Finally, recusal requests must be timely made. ***Lomas v. Kravitz***, 642 Pa. 181, 170 A.3d 380 (2017).

> The law is clear. In this Commonwealth, a party must seek recusal of a jurist at the earliest possible moment, *i.e.*, when the party knows of the facts that form the basis for a motion to recuse. If the party fails to present a motion to recuse at that time, then the party's recusal issue is time-barred and waived.

*Id.* at 390 (citations omitted).

Initially, we note that, at the commencement of the March 26, 2018, sentencing hearing, Judge McDermott specifically informed the parties she was not obligated to accept the parties' negotiated sentence; but rather, it was her job "to conduct a hearing to decide what the appropriate sentence is." N.T., 3/26/18, at 11-12. Judge McDermott further stated she would need to hear testimony, as well as arguments, and even if she believed Appellant attempted to change his life while he was in prison, "that does not mean that [she was] accepting the Commonwealth's offer." *Id.* at 14. Appellant did not object to any of these statements or ask for Judge McDermott's recusal at this time.

Additionally, after Judge McDermott heard impact statements from the victims' families, the following exchange occurred in the midst of the sentencing hearing:

> **[ADA]:** Your Honor, the offer that was extended in this case was 29 years to life. Obviously the facts of this case are egregious and I discussed that point-blank with the family about that aspect. But based on his scores, how he's done in prison, that was the offer conveyed. That's what the committee and the DA approved.
>
> **THE COURT:** As everyone knows, I'm not the DA and I'm not the committee and I give my independent judgment.
>
> **[ADA]:** I agree 100 percent.
>
> ***
>
> **[APPELLANT'S COUNSEL]:** If I may, Your Honor, there was, as you know, a formal offer that was made and accepted.
>
> **THE COURT:** Well, he accepted it, but I haven't.
>
> **[APPELLANT'S COUNSEL]:** I know that. But I have the formal acceptance form that should be made part of the record.

**THE COURT:** No. Only if I accept it does it become part of the record. I haven't agreed to accept it.

**[APPELLANT'S COUNSEL]:** Okay. Just for purposes of the record---

**THE COURT:** Well, you can mark it, but…

**[APPELLANT'S COUNSEL]:** Mark it D-1.

*Id.* at 46-48. As is evident, Appellant did not object to Judge McDermott indicating that she could refuse to impose the negotiated sentence, and Appellant did not ask for Judge McDermott's recusal at this time.

At the end of all testimony, evidence, and arguments, the following relevant exchange occurred:

**THE COURT:** All right. Thank you, [Appellant]. [Appellant], you need to know that if I was sentencing you today for this crime, you would be getting a lot more time than I'm giving you, because you may not be happy with the sentence.

\*\*\*

Please stand.

(Appellant stood).

**[APPELLANT'S COUNSEL]:** Your Honor, if I may, you're disinclined to accept the offer?

**THE COURT:** I've made that very clear.

**[APPELLANT'S COUNSEL]:** I'd ask you to recuse yourself.

**THE COURT:** No, I'm not recusing myself. I'm going to sentence [Appellant] now. The case was assigned. It was transferred to me for a hearing. It remains with me. And I am going to sentence him accordingly.

*Id.* at 91-92.

Based on the aforementioned, we initially conclude Appellant did not seek Judge McDermott's recusal in a timely fashion. That is, at the very

commencement of the sentencing hearing, as well as in the midst of the sentencing hearing, Judge McDermott expressly indicated she had discretion to accept or reject the parties' negotiated sentence, and she would not make a decision until after she considered the appropriate sentencing factors. However, Appellant did not object or make a motion for recusal at this time.

Rather, Appellant waited until the close of all testimony, evidence, and arguments before seeking Judge McDermott's recusal. Accordingly, the record reveals Appellant did not seek recusal of Judge McDermott at the earliest possible moment (*i.e.*, when Judge McDermott clearly stated she had no duty to accept the parties' negotiated sentence). **See *Lomas*, *supra*.**

In any event, assuming, *arguendo*, Appellant's objection at the conclusion of the sentencing hearing preserved his challenge, we find no merit to his claim. As Judge McDermott relevantly explained in addressing Appellant's issue:

> As per the First-Judicial District's General Court Regulation No. 1 of 2016, all contested resentencing hearings are to be presided [over] by either [Judge McDermott] or the Honorable Jeffrey P. Minehart.[5]
>
> ---
> 5 On March 1, 2018, the instant matter was transferred from Judge Minehart to [Judge McDermott] in anticipation of a contested resentencing hearing.
> ---
>
> At the time of assignment, [Judge McDermott], the Commonwealth, and [Appellant] anticipated that a contested sentencing hearing would occur on the date of resentencing. The mere fact that [Appellant] negotiated with the Commonwealth for a stipulated sentence does not obligate the [lower court] to accept the negotiations. At no point prior to the instant hearing did [Judge McDermott] indicate that [she] would accept the negotiations, nor did [Judge McDermott] colloquy [Appellant]

about accepting the negotiated sentencing offer before commencing the instant resentencing hearing.

[Appellant] alleges that [Judge McDermott] was obligated to recuse [herself] after [she] rejected his and the Commonwealth's negotiated sentence offer. [Appellant] cites the Supreme Court of Pennsylvania's 1969 holding in **Commonwealth v. Evans**, [434 Pa. 52,] 252 A.2d 689 (1969), which summarizes the then current ABA Minimum Standards for guilty pleas, suggesting that when a Common Pleas judge rejects a negotiated plea offer, the matter should be sent to another judge for trial, when practical. **Evans**, 252 A.2d at 691, n.1.

The **Evans** holding is irrelevant, as the instant appellant was not negotiating his own guilty plea; he was rightfully convicted of his crimes in 1990. At no point during the instant proceedings was [Judge McDermott] required to make a decision that would affect the guilt or innocence of [Appellant].

Moreover, [Appellant] fails to establish that [Judge McDermott] was incapable of honorably, fairly, and competently presiding over the instant matter. He has presented no evidence of bias, prejudice, or unfairness necessary to show that [Judge McDermott's] recusal was warranted. [Appellant] fails to meet his burden.

[Appellant's] position reveals his naked attempt to shop for a favorable judge in this jurisdiction. In essence, he seeks a new sentence for time served, notwithstanding [Judge McDermott's] duty to consider the gravity of his offense, the protection of the public, the impact his crime had on the victim and the community, and the rehabilitative needs of [Appellant]. As [Judge McDermott] clearly explained during both the resentencing hearing and during [Appellant's] argument for reconsideration, the negotiated sentence as presented was appropriate, given [Appellant's] role as the sole assailant in a double homicide….[T]he recommended sentence gave [Judge McDermott] extreme pause when considering the totality of the circumstances.

[Appellant's] references to [Judge McDermott's] statements in four other Juvenile Life Sentences Without parole…hearings is also irrelevant to this matter. The [instant] matter was originally scheduled for a contested hearing on December 1, 2017[,] before the Honorable Jeffrey Minehart. After assignment to [Judge McDermott], [she] treated and prepared for the instant matter as a contested hearing, and [she] gave no indication to either party that [she] would accept the negotiations. Unlike in the matters

cited by [Appellant], [Judge McDermott] did not colloquy [Appellant] about his rights with respect to a negotiated sentencing hearing. [Appellant] erroneously assumed that [Judge McDermott] would accept the negotiated offer without conducting [her] own independent analysis. [Judge McDermott] ultimately decided to reject the sentencing negotiations at the conclusion of the sentencing hearing, after hearing argument from both sides. Nothing on the record indicates that [Judge McDermott] acted with bias or prejudice necessitating recusal, nor has [Appellant] demonstrated that [Judge McDermott] abused [her] discretion.

Trial Court Opinion, filed 6/5/18, at 4-6 (footnote in original) (footnotes omitted).

We agree with Judge McDermott's well-reasoned opinion and find no abuse of discretion. Applying the appropriate standard, we specifically conclude Appellant has not produced any evidence of bias, prejudice, or unfairness that raises a substantial doubt as to Judge McDermott's ability to preside over Appellant's sentencing proceedings impartially. *See Abu-Jamal*, *supra*. Moreover, we note it is well-settled that the Sentencing Code places an independent obligation upon a judge to impose a sentence, which the judge finds appropriate upon consideration of the factors set forth in 42 Pa.C.S.A. § 9721(b).[3]

_____

[3] 42 Pa.C.S.A. § 9721(b) provides that the court shall impose a sentence of confinement that is "consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant."

We hold that merely because the district attorney and defense counsel negotiate a stipulated sentence, the sentencing judge is not bound thereby and has the ultimate independent responsibility to impose a sentence consistent with the Sentencing Code.[4] The fact Judge McDermott ultimately rejected the parties' negotiated sentence does not require the conclusion that she was biased, prejudiced, or unfair such that she should have recused herself from this matter. Therefore, we find no merit to Appellant's first claim.

In his second issue, Appellant contends that, in resentencing Appellant, the lower court relied upon "false" factors; namely, Appellant would live into his 90s, he engaged in sophisticated, criminal behavior in disposing of the victims' corpses, and he desecrated the bodies. This presents a challenge to the discretionary aspects of his sentence.[5]

---

[4] Appellant seeks a *per se* rule to the effect that, once the district attorney and defense counsel agree to a stipulated sentence, the trial court must accept such sentence upon resentencing. To adopt this rule would take the sentencing responsibility from the sentencing judge and, in effect, allow the district attorney and defense counsel to usurp the power of the sentencing court.

[5] It bears mentioning that, to correct Pennsylvania's unconstitutional sentencing scheme in the wake of **Miller**, **supra**, and **Montgomery**, **supra**, our Legislature enacted 18 Pa.C.S.A. § 1102.1, which provides that offenders who were between the ages of fifteen and seventeen at the time of their crimes and convicted of first-degree murder after June 24, 2012, must be sentenced to a maximum term of life imprisonment. **See** 18 Pa.C.S.A. § 1102.1(a)(1). The minimum term for that class of offenders is 35 years in prison. **Id.** The new statute did not address the resentencing of juvenile offenders, such as Appellant, convicted of murder and sentenced to life without parole before June 24, 2012. However, in **Commonwealth v. Batts**,

We have long held that "[t]he right to appeal a discretionary aspect of sentence is not absolute." ***Commonwealth v. Barnes***, 167 A.3d 110, 122 (Pa.Super. 2017) (*en banc*) (citation omitted). Instead, such challenges are considered petitions for allowance of appeal. ***Id.*** Generally, an appellant who wishes to challenge the discretionary aspects of his sentence must satisfy a four-part test to invoke this Court's jurisdiction:

> (1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect pursuant to Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

***Id.*** (citation omitted). Finally, "[w]hether a particular issue constitutes a substantial question about the appropriateness of sentence is a question to be evaluated on a case-by-case basis." ***Id.*** (citation omitted).

Here, Appellant filed a timely notice of appeal, and he presented his issue in his post-sentence motion. Also, Appellant included a separate statement in his brief pursuant to Pa.R.A.P. 2119(f), and a claim the sentencing court relied upon erroneous factors raises a substantial question.

---

640 Pa. 401, 163 A.3d 410 (2017) ("***Batts II***"), our Supreme Court held that juvenile offenders for whom the sentencing court deems life without parole sentences inappropriate "are subject to a mandatory maximum sentence of life imprisonment as required by Section 1102(a), accompanied by a minimum sentence determined by the common pleas court upon resentencing." ***Id.*** at 421. Our Supreme Court held that in fashioning a minimum sentence, courts have discretion but "should be guided by the minimum sentences contained in Section 1102.1(a)[.]" ***Id.*** at 458.

*See Commonwealth v. Macias*, 968 A.2d 773, 776 (Pa.Super. 2009) ("[A]n allegation that the court considered an impermissible sentencing factor raises a substantial question.") (citation omitted)). Hence, we will consider the substantive merits of Appellant's sentencing claim.

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Zirkle*, 107 A.3d 127, 132 (Pa.Super. 2014) (quotation omitted).

With regard to Appellant's claim there is no evidence his disposal of the victims' bodies was "criminally sophisticated" or constituted "desecration," and thus, the sentencing court was not permitted to rely on these factors in sentencing Appellant, we disagree. As the sentencing court explained in its opinion:

> At the commencement of the sentencing hearing, the Commonwealth described how, after the shooting, [Appellant] took the decedent Ramsey's money, jewelry, and car, the latter of which he got rid of. [Appellant] hid the murder weapon in his mother's room, and he recruited Stackhouse, an allegedly abusive stepfather, to move the bodies from upstairs bedrooms to a pit in the garage of the house. [Appellant] and his family members also cleaned up the blood in the house and disposed of the bedding and other evidence of the crime. After Bernard Russell, an individual to whom [Appellant] owed money, came to [Appellant's] house to collect, [Appellant] enlisted two drug addicts known as Travis and Beetle, as well as his paramour, Ms. Underwood, to dispose of the bodies. The authorities did not

- 14 -

discover the bodies until October 3, 1989, some five days after the murders.

The above described facts demonstrated a sophistication not present in most other shootings, especially committed by minors. The [c]ourt's interpretation of the facts of this case as an example of [Appellant's] sophisticated thinking was a fair inference, well within the purview of the [c]ourt's authority during sentencing….[H]is argument fails.

Trial Court Opinion, filed 6/5/18, at 10-11 (citations to record omitted).

We agree with the sentencing court that there was ample evidence from which the court could infer Appellant was "criminally sophisticated" in his actions after he committed the killings. Further, we conclude the facts of the crime support the sentencing court's conclusion that Appellant desecrated[6] the bodies after the killings. Accordingly, these did not constitute "false" factors as alleged by Appellant.

With regard to Appellant's claim there is no evidence that he will live into his 90s, assuming, *arguendo*, he is correct that no such evidence was presented during the sentencing hearing,[7] Appellant has not shown that he is entitled to relief. As the trial court explained in its opinion:

---

[6] "Desecrate" means "to defile[.]" Black's Law Dictionary 477 (8th ed. 2004). In further support of the sentencing court's sound rationale, we note that Appellant was convicted of abuse of corpse, 18 Pa.C.S.A. § 5510, which provides "a person who treats a corpse in a way that he knows would outrage ordinary family sensibilities commits a misdemeanor of the second degree."

[7] We clarify that, during the sentencing hearing, the sentencing court did not affirmatively state Appellant would live into his 90s; but rather, the court merely noted that, generally, "a life expectancy is in the 90s these days."

- 15 -

[Appellant] further claims the [c]ourt improperly considered [Appellant's] life expectancy when furnishing his sentence. [Appellant] fails to demonstrate a modicum of prejudice, as he will be eligible for parole in October 2024, when [Appellant] will be fifty-two years old. In its recent holding in **Commonwealth v. Bebout**, [186 A.3d 462] (Pa.Super. 2018), the Superior Court explained the upper limit of what constitutes a constitutional sentence: there must be some meaningful opportunity to obtain release, such that it must be at least plausible that one could survive until the minimum release date, with some consequential likelihood that a non-trivial amount of time at liberty exists. In deeming the appellant's sentence constitutional, the Superior Court noted that possible release at the age of sixty did not constitute a *de facto* life sentence. The appellant had a reasonable opportunity for meaningful release, the Superior Court held, despite his contention that the life expectancy for juvenile life prisoners was 50.6 years. Regardless of what [Appellant] argues his life expectancy would be [in the case *sub judice*], the [c]ourt's sentence renders him eligible for parole long before he reaches that age.

Trial Court Opinion, filed 6/5/18, at 11 (footnote omitted).

We agree with the trial court's sound reasoning and conclude that Appellant is not entitled to relief.

Appellant's third and fourth issues are intertwined. Specifically, Appellant claims that, upon resentencing Appellant, the sentencing court failed to consider his "rehabilitation, growth, and remorse," as well as the protection of the public, and, instead, focused entirely upon the facts surrounding the homicides. Appellant's Brief at 29. Appellant argues the sentencing court diminished his "accomplishments of the past 28½ years, while focusing upon

---

N.T., 3/26/18, at 13. In any event, as discussed *infra*, Appellant has failed to demonstrate he is entitled to relief on his claim.

the static factors of the homicide itself." *Id.* at 32. He notes that he has "fully demonstrated rehabilitation…[and the] record demonstrated that [Appellant] no longer posed a danger to the community." *Id.* at 34-35. He contends the sentencing court's abuse of discretion led to an excessive minimum sentence requiring him to "serve an additional 6 years of incarceration before even being eligible for parole." *Id.* at 37.

Initially, we note this issue presents a challenge to the discretionary aspects of Appellant's sentence. Appellant has preserved the challenge in his post-sentence motion, and we conclude it raises a substantial question permitting our review. *See generally Commonwealth v. Lawrence*, 960 A.2d 473 (Pa.Super. 2008) (holding that averment court sentenced based solely on seriousness of offense and failed to consider relevant factors raises a substantial question). Thus, we shall review the merits of Appellant's issue.

In *Batts II*, with regard to fashioning a minimum sentence, our Supreme Court specifically held:

> In determining the minimum sentence for a juvenile convicted of first-degree murder prior to *Miller*, a sentencing court is to exercise its discretion to find the appropriate, individualized sentence in each case, just as it would when fashioning the minimum sentence for any other defendant before it.
>
> ***
>
> In sentencing a juvenile offender to life with the possibility of parole, traditional sentencing considerations apply. *See* 42 Pa.C.S. § 9721(b). The sentencing court should fashion the

minimum term of incarceration using, as guidance, section 1102.1(a) of the Crimes Code.[8]

***Batts II***, ***supra***, 163 A.3d at 456, 460 (footnote added).

In the case *sub judice*, the sentencing court acknowledged that it reviewed Appellant's Sentencing Memorandum. **See** Trial Court Opinion, filed 6/5/18, at 8. The Sentencing Memorandum set forth information concerning the pre-crime physical and emotional abuse inflicted upon Appellant by his stepfather, as well as information concerning Appellant's completion of various programs and classes since he has been in prison. Further, during the sentencing hearing, the sentencing judge acknowledged the following:

> [B]oth sides need to understand what I take into account when I sentence. I take into account the nature of the crime, the seriousness of the offense. I take into account the danger, the danger that the defendant poses to the community.
>
> Now, the difference is back 20 years ago [when Appellant committed his crimes] we didn't have as much information as we have available today. I consider his rehabilitative needs. And I don't know, but I'm going to tell you that in terms of prison behavior after his initial reaction to prison…[Appellant] your behavior has changed.
>
> His behavior in terms of the ones that I look at, significant improvement. And, in essence, he has done beyond what the prisons have asked of him. You need to know that, because that's something that I factor in.

_____

[8] With regard to juvenile first-degree murder convictions, Section 1102.1(a) of the Crimes Code relevantly provides "[a] person who at the time of the commission of the offense was 15 years of age or older shall be sentenced to a term of life imprisonment without parole, or a term of imprisonment, the minimum of which shall be at least 35 years to life." 18 Pa.C.S.A. § 1102.1(a)(1).

**But I also factor in my decision the impact, [Appellant], that your behavior had on the victims' families and the community as a whole, and I can't discount that either.**

**So I'll be blunt with all of you, the factor in this [c]ourt's mind is the fact that there's two deaths here.**

\*\*\*

I need to hear from the victims' families. I also need you to understand, and I'm telling you this ahead of time, that I'm not— when sentencing, I'm not going to discount [Appellant's] behavior in prison[.] And so you know in advance, he's had many, many letters written in support for a variety of different factors.

I believe, and I can't say this all the time, I believe that you are absolutely, unequivocally sincere and you've acted in your belief, in your attempts to change your life around[.]

\*\*\*

[Appellant], you need to know that if I was sentencing you today for this crime, you would be getting a lot more time than I'm giving you, because you may not be happy with the sentence. It's not what the Commonwealth thinks the case is worth. I cannot discount two lives. I believe in proportionality in a sentence.

Trust me when I tell you that you are getting a break from me because I believe every word you said. And I believe that when you are released, you will continue to do what you've been doing in prison.

\*\*\*

So, [Appellant], on—you have two different counts of first-degree murder. The charge on each of them is 35 to life, and that is to run concurrent. You are getting no further penalty on either of the other charges.

N.T., 3/26/18, at 12-13, 91-92 (bold added).

As the aforementioned reveals, contrary to Appellant's argument, the sentencing court did not focus entirely upon the facts surrounding the homicides without consideration of Appellant's rehabilitation, growth, and

remorse, as well as the need to protect the public. Rather, as mandated by Section 9721(b), the court properly weighed and considered the protection of the public, the gravity of Appellant's offense as it relates to the impact on the lives of the victims' families and on the community, and the rehabilitative needs of Appellant. **See** 42 Pa.C.S.A. § 9721(b). Accordingly, we find no merit to Appellant's claims.

In his final issue, Appellant contends the sentencing court "incorrectly determined that [it] was required to impose a mandatory maximum sentence of life." Appellant's Brief at 37. He further contends that a mandatory maximum term of life imprisonment is unconstitutional as applied to juvenile offenders and violates the mandates of proportionality and individualized sentencing. Appellant maintains that a mandatory maximum term of life imprisonment effectively denies him a meaningful opportunity for release.

Appellant's claim presents a challenge to the legality of his sentence. **See Commonwealth v. Seskey**, 170 A.3d 1105 (Pa.Super. 2017). "When reviewing the legality of a sentence, our standard of review is *de novo* and our scope of review is plenary." **Commonwealth v. Melvin**, 172 A.3d 14, 19 (Pa.Super. 2017) (citation omitted).

Initially, we reject Appellant's contention that the sentencing court incorrectly determined it was required to impose a mandatory maximum sentence of life imprisonment. As recognized by this Court, in **Batts II**,

following the Legislature's passing of Section 1102.1, our Supreme Court relevantly held the following:

> For those defendants [convicted of first or second-degree murder prior to June 25, 2012,] for whom the sentencing court determines a [life without parole] sentence is inappropriate,[9] it is our determination here that they are subject to a mandatory maximum sentence of life imprisonment as required by Section 1102.1(a), accompanied by a minimum sentence determined by the common pleas court upon resentencing[.]

**Seskey**, 170 A.3d at 1108 (citing to **Batts II**, 163 A.3d at 421) (citation omitted) (footnoted added). In light of our Supreme Court's decision in **Batts II**, there was valid authority for the sentencing court to impose upon Appellant in this case a maximum sentence of life imprisonment for his first-degree murder convictions.

As for Appellant's claim a mandatory maximum term of life imprisonment is unconstitutional as applied to juvenile offenders convicted of murder prior to **Miller** and violates the mandates of individualized sentencing, this Court has repeatedly rejected these claims. **See Commonwealth v. Olds**, 192 A.3d 1188 (Pa.Super. 2018) (holding imposition of mandatory maximum sentence of life imprisonment for juvenile defendant convicted of

---

[9] We note the High Court in **Miller** did not foreclose sentencing courts from ever imposing terms of life without parole upon juvenile offenders. Instead, it required sentencing courts to consider a juvenile's immaturity and capacity for change, and to refrain from imposing a life without parole term except in extreme cases where the sentencing court determines that the juvenile is incapable of rehabilitation. **Miller**, **supra**. In any event, in the case *sub judice*, Appellant was resentenced to 35 years to life imprisonment, and thus, the trial court's sentence permits parole.

second-degree murder prior to **Miller** was constitutional); **Seskey**, **supra** (holding trial court was required to impose mandatory maximum sentence of life imprisonment when it resentenced juvenile defendant convicted of first-degree murder prior to **Miller**).

Further, as to Appellant's claim a mandatory maximum term of life imprisonment is unconstitutional since it affords him no meaningful opportunity for release, we conclude Appellant misapprehends Pennsylvania's sentencing scheme.

Pennsylvania utilizes an indeterminate sentencing scheme with a minimum period of confinement and a maximum period of confinement. "In imposing a sentence of total confinement the court shall at the time of sentencing specify any maximum period up to the limit authorized by law…." 42 Pa.C.S.A. § 9756(a). **See also Commonwealth v. Saranchak**, 544 Pa. 158, 675 A.2d 268, 277 n.1 (1996). Here, that maximum period is life imprisonment. Therefore, the sentence imposed, with a maximum period of life, is lawful.

To the extent Appellant meant his minimum term is unconstitutional and affords him no meaningful opportunity for release, we note "[t]he maximum term represents the sentence imposed for a criminal offense, with the minimum term merely setting the date after which a prisoner may be paroled." **Martin v. Pennsylvania Bd. of Probation and Parole**, 576 Pa. 588, 840 A.2d 299, 302 (2003). In considering what constitutes a "meaningful

opportunity for release," this Court has recognized that "[t]o be meaningful or, at least, potentially meaningful, it must at least be plausible that one could survive until the minimum release date with some consequential likelihood that a non-trivial amount of time at liberty awaits." **Commonwealth v. White**, 193 A.3d 977, 986 (Pa.Super. 2018) (quotation and emphasis omitted).

Here, the lower court sentenced Appellant to an aggregate minimum term of thirty-five years' imprisonment. Appellant has been incarcerated for his crime since the time of his arrest when he was seventeen years old. Upon resentencing, the trial court gave Appellant credit for all time served from the date of his arrest. Thus, Appellant will be eligible for parole when he is fifty-two years old. Accordingly, Appellant's claim that his sentence offers him no meaningful opportunity for parole is without merit.

For all of the foregoing reasons, we affirm.

Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/8/19

- 23 -