J-A22017-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DARON NESBIT | : | |
| | : | |
| Appellant | : | No. 1588 MDA 2019 |

Appeal from the Judgment of Sentence Entered July 7, 2017
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0002131-1997

BEFORE:  SHOGAN, J., STABILE, J., and MURRAY, J.

MEMORANDUM BY SHOGAN, J.:                    **FILED FEBRUARY 17, 2021**

Appellant, Daron Nesbit, appeals *nunc pro tunc* from the judgment of sentence entered on July 7, 2017, in the York County Court of Common Pleas. After review, we affirm.

A prior panel of our Court summarized the relevant facts and procedural history of this matter as follows:

> On March 8, 1997, Paul Smith [("Victim")] was celebrating his cousin's birthday with friends and relatives.  At some point, the group went to the Majestic Restaurant, where [Victim] went inside to purchase beer.  As [Victim] left the restaurant, he encountered Melisha Grimes [("Grimes")], and he stopped to talk with her. They returned to the restaurant so that Grimes could write down her pager number for [Victim].  While inside, Appellant, who was sixteen years old, approached them, and a verbal altercation occurred.  Soon, the confrontation moved outside into the parking lot, and Appellant and [Victim] began to fight.  Appellant pulled out a gun and fired two shots at [Victim], killing him, and [Appellant] fled.

On November 13, 1997, a jury convicted Appellant of, *inter alia*, first-degree murder.[1]  On December 29, 1997, the trial court sentenced Appellant to life in prison, and Appellant timely appealed.  On March 31, 1999, this Court affirmed Appellant's judgment of sentence.  **See Commonwealth v. Nesbit**, No. 810 Harrisburg 1998 (Pa.Super. filed 3/31/99) (unpublished memorandum).

[1] 18 Pa.C.S.A. 2502(a).

Thereafter, Appellant filed a counseled [petition pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546], and following an evidentiary hearing, the PCRA court granted Appellant's petition, vacated his judgment of sentence, and ordered a new trial.  Consequently, on November 5, 2001, Appellant proceeded to a new trial, following which a jury convicted him of first-degree murder.  On November 20, 2001, the trial court sentenced Appellant to life in prison, and on November 12, 2002, this Court affirmed Appellant's judgment of sentence.  **Commonwealth v. Nesbit**, No.1995 MDA 2001 (Pa.Super. filed 11/12/02) (unpublished memorandum).  On June 3, 2003, the Supreme Court denied Appellant's petition for allowance of appeal.

On February 5, 2004, Appellant filed a timely *pro se* PCRA petition, and following the appointment of counsel, he filed an amended, counseled PCRA petition.  By opinion and order entered on September 17, 2004, the PCRA court denied Appellant's PCRA petition, and on February 27, 2006, this Court affirmed.  **Commonwealth v. Nesbit**, No. 1718 MDA 2004 (Pa.Super. filed 2/27/06) (unpublished memorandum).  On December 30, 2005, the Supreme Court denied Appellant's petition for allowance of appeal.

On March 6, 2006, Appellant filed a second *pro se* PCRA petition, and the PCRA court appointed counsel.  On March 27, 2006, the Commonwealth filed a motion to dismiss on the basis the PCRA petition was untimely filed[1] and on April 11, 2006, the

_____

[1]  It is well settled that PCRA time limitations are jurisdictional.  **Commonwealth v. Fahy**, 737 A.2d 214, 222 (Pa. 1999).  A PCRA petition, "including a second or subsequent petition, shall be filed within one year of

PCRA court issued notice of intent to dismiss the PCRA petition without a hearing. In response, counsel filed a petition to withdraw his representation, and by order entered on May 22, 2006, the PCRA court granted counsel's petition to withdraw and afforded Appellant additional time to respond to the PCRA court's notice of intent to dismiss without a hearing.

On May 30, 2006, Appellant filed a *pro se* notice of appeal from the PCRA court's order permitting counsel to withdraw, and by order entered on June 16, 2006, the PCRA court dismissed Appellant's PCRA petition. Appellant subsequently filed another *pro se* notice of appeal on or about July 10, 2006. On September 26, 2007, this Court quashed Appellant's May 30,

_____

the date the judgment becomes final[.]" 42 Pa.C.S. § 9545(b)(1). A judgment of sentence becomes final "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." *Id.* at § 9545(b)(3). When a petitioner files a PCRA petition beyond the one-year time-bar, he must plead and prove at least one of the time-bar exceptions. These exceptions include:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1)(i)-(iii). Previously, a petitioner was required to raise the claim within sixty days from the date that the claim could have been raised; however, Section 9545(b)(2) was amended and now provides that a petitioner has one year rather than sixty days to raise his claim. 42 Pa.C.S. § 9545(b)(2) (as amended October 24, 2018, P.L. 894, No. 146, effective in sixty days). This amendment became effective on December 24, 2018, but it applies only to claims arising on December 24, 2017, or thereafter. *Id.*

2006, appeal on the basis it was an improper appeal from an interlocutory order; however, this Court affirmed as it pertained to Appellant's appeal from the PCRA court's order dismissing his second PCRA petition. *See Commonwealth v. Nesbit*, Nos. 1351 MDA 2006, 1365 MDA 2006 (Pa.Super. filed 9/26/07) (unpublished memorandum). Specifically, regarding the latter, this Court held Appellant's second PCRA petition was untimely filed and that no exceptions to the timeliness rule applied. The Supreme Court denied Appellant's petition for allowance of appeal on June 24, 2008.

On or about August 1, 2012, Appellant filed a third *pro se* PCRA petition, and the PCRA court issued notice of its intent to dismiss without a hearing. Counsel entered an appearance and filed an answer on behalf of Appellant. By order entered on November 4, 2013, the PCRA court denied Appellant's third PCRA petition, and on December 3, 2013, he filed a counseled notice of appeal.[2] On July 29, 2014, this Court affirmed the PCRA court's denial of Appellant's third PCRA petition. *See Commonwealth v. Nesbit*, No. 2162 MDA 2013 (Pa.Super. filed 7/29/14) (unpublished memorandum). Specifically, this Court found Appellant's third PCRA petition to be untimely filed and not subject to any of the timeliness exceptions. By order entered on December 23, 2014, the Supreme Court denied Appellant's petition for allowance of appeal.

> [2] While the appeal from the denial of Appellant's third PCRA petition was pending, Appellant filed a *pro se* PCRA petition on or about January 14, 2014, in which he raised the issue of newly-discovered facts …. [T]he PCRA court properly dismissed the petition on the basis it lacked jurisdiction to address it while Appellant's appeal was pending in this Court. *Commonwealth v. Lark*, 746 A.2d 585 (Pa.2000) (holding that a PCRA trial court may not entertain a new PCRA petition when a prior petition is still under review on appeal).

*Commonwealth v. Nesbit*, 136 A.3d 1039, 1155 MDA 2015 (Pa. Super. filed January 28, 2016) (unpublished memorandum). On March 3, 2015, Appellant filed a counseled, fourth PCRA petition. *Id.* The PCRA court dismissed this

petition as untimely, and Appellant filed a timely appeal. *Id.* After review, we agreed with the PCRA court that Appellant's fourth PCRA petition was untimely and affirmed the order denying Appellant's PCRA petition. *Id.*

On March 22, 2016, Appellant filed a fifth PCRA petition *pro se*. In this petition, Appellant alleged that the holdings in *Miller v. Alabama*, 567 U.S. 460 (2012), and *Montgomery v. Louisiana*, ___ U.S.___, 136 S.Ct. 718 (2016), rendered his sentence of life without the possibility of parole illegal because Appellant was less than eighteen years old at the time of the crime. PCRA Petition, 3/22/16, at 3, 8.

In *Miller*, the United States Supreme Court held that it is unconstitutional for state courts to impose an automatic life sentence without possibility of parole for a murder committed while the defendant was less than eighteen years old. *Miller*, 567 U.S. at 470. Moreover, in *Montgomery*, the Supreme Court held that *Miller* announced a substantive rule of constitutional law that must be applied retroactively in cases on state collateral review. *Montgomery*, 136 S.Ct. at 736.

In *Commonwealth v. Secreti*, 134 A.3d 77, 82 (Pa. Super. 2016), this Court held that the date of the *Montgomery* decision is to be used when calculating whether a PCRA petition, which asserts the Supreme Court's recognition of a constitutional right pursuant to 42 Pa.C.S. § 9545(b)(1)(iii),

is timely filed under the sixty-day rule of 42 Pa.C.S. § 9545(b)(2).[2] **Secreti**, 134 A.3d at 82. Pursuant to **Secreti**, Appellant satisfied the sixty-day rule provided in the prior version of Section 9545(b)(2) because **Montgomery** was decided on January 25, 2016, and Appellant filed his PCRA petition within sixty days on March 22, 2016.

The PCRA court held hearings on April 25, 2017, and June 6, 2017. Because Appellant was sixteen years old at the time of his crime, the holdings from **Miller** and **Montgomery** provided Appellant relief, and the PCRA court ordered Appellant to be resentenced. N.T. (PCRA), 6/6/17, at 129-130.

On July 7, 2017, the trial court held a sentencing hearing. At the conclusion of the hearing, the trial court resentenced Appellant to a term of thirty-eight years to life, with credit for time-served. N.T., (Sentencing), 7/7/17, at 20. Appellant's counsel did not file a post-sentence motion or an appeal.

On September 5, 2017, Appellant filed a timely PCRA petition in which he sought the restoration of his direct appeal rights *nunc pro tunc*. On September 21, 2017, the PCRA court reinstated Appellant's appellate rights *nunc pro tunc*, and on October 6, 2017, Appellant filed an appeal. On May 18,

---

[2] At the time Appellant filed his fifth PCRA petition, 42 Pa.C.S. § 9545(b)(2) provided sixty days to raise such a claim. **See** footnote 1 *supra*.

2018, this Court dismissed Appellant's *nunc pro tunc* direct appeal for failure to file a brief. Order, 5/18/18.

On April 29, 2019, Appellant filed a timely PCRA petition following this Court's May 18, 2018 order dismissing Appellant's direct appeal.[3] On August 22, 2019, the PCRA court granted Appellant's PCRA petition, and reinstated Appellant's post-sentence-motion rights and direct-appeal rights *nunc pro tunc*.

On August 28, 2019, Appellant filed a timely post-sentence motion *nunc pro tunc* in which he alleged the following: a sentence of thirty-eight years to life in prison was excessive; the sentence did not comport with the protection of the public and gravity of the offense; and the resentencing court failed to consider Appellant's rehabilitative needs and mitigating factors. Post-Sentence Motion, 8/28/19. The trial court denied Appellant's post-sentence

_____

[3] The September 21, 2017 order "reset the clock" relative to issues concerning Appellant's **resentencing** on July 7, 2017, because it reinstated appellate rights *nunc pro tunc*. **See Commonwealth v. Lesko**, 15 A.3d 345, 374 (Pa. 2011) (holding that a PCRA petition challenging issues concerning the appellant's resentencing was timely when filed within one year of the date that "the new judgment of sentence became final"); **see also Commonwealth v. McKeever**, 947 A.2d 782, 786 (Pa. Super. 2008) (providing that an appellant has a constitutional right to appeal the judgment of sentence entered after resentencing limited to the resentencing). Appellant's April 29, 2019 PCRA petition challenged claims related only to his July 7, 2017 resentencing. The July 7, 2017 judgment of sentence became final on June 17, 2018, thirty days after the May 18, 2018 order dismissing Appellant's direct appeal. 42 Pa.C.S. § 9545(b)(3). Thus, Appellant had one year from June 17, 2018, in which to file a timely PCRA petition, and the April 29, 2019 petition, therefore, was timely. **Id.** at § 9545(b)(1).

motion on September 9, 2019, and Appellant filed a timely appeal on October 2, 2019. Both the trial court and Appellant complied with Pa.R.A.P. 1925.

On appeal, Appellant raises the following issues for this Court's consideration:

I. Whether the [r]esentencing [c]ourt erred when it both imposed an excessive sentence and did not take into account mitigating factors, when in determining [Appellant's] rehabilitative needs, the [r]esentencing [c]ourt failed to take into account the lack of rehabilitative options available at the State Correctional Institution he was incarcerated in.

II. Whether the [r]esentencing [c]ourt erred when it based [Appellant's] [s]entence on a perceived lack of remorse despite the facts of the case at issue.

III. Whether the [r]esentencing [c]ourt erred when it imposed an illegal sentence when it resentenced [Appellant] to a [l]ife term not supported by [s]tatutory [a]uthority.

Appellant's Brief at 5.

Appellant's first two issues challenge the discretionary aspects of his sentence. Because these issues overlap, we address them concurrently. We note that "[t]he right to appellate review of the discretionary aspects of a sentence is not absolute." *Commonwealth v. Zirkle*, 107 A.3d 127, 132 (Pa. Super. 2014). Rather, where an appellant challenges the discretionary aspects of a sentence, the appeal should be considered a petition for allowance of appeal. *Commonwealth v. W.H.M.*, 932 A.2d 155, 163 (Pa. Super. 2007).

As we observed in **Commonwealth v. Moury**, 992 A.2d 162, 170 (Pa. Super. 2010) (citing **Commonwealth v. Evans**, 901 A.2d 528 (Pa. Super. 2006)):

> An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
> > [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

**Id**. at 170. Whether a particular issue constitutes a substantial question about the appropriateness of sentence is a question to be evaluated on a case-by-case basis. **Commonwealth v. Kenner**, 784 A.2d 808, 811 (Pa. Super. 2001).

Here, the first three requirements of the four-part test are met: Appellant filed a timely *nunc pro tunc* appeal; Appellant preserved the issues in his *nunc pro tunc* post-sentence motion; and Appellant included a statement raising the issues in his brief pursuant to Rule 2119(f). **Moury**, 992 A.2d at 170. Therefore, we address whether Appellant has raised a substantial question requiring us to review the discretionary aspects of the sentence imposed by the sentencing court.

"We examine an appellant's Rule 2119(f) statement to determine whether a substantial question exists." *Commonwealth v. Ahmad*, 961 A.2d 884, 886-887 (Pa. Super. 2008). Allowance of appeal will be permitted only when the appellate court determines that there is a substantial question that the sentence is not appropriate under the Sentencing Code. *Commonwealth v. Hartle*, 894 A.2d 800, 805 (Pa. Super. 2006). A substantial question exists where an appellant sets forth a plausible argument that the sentence violates a particular provision of the Sentencing Code or is contrary to the fundamental norms underlying the sentencing process. *Id*.

In his Pa.R.A.P. 2119(f) statement, Appellant asserts that the sentence is manifestly excessive and unreasonable because the sentencing court did not consider Appellant's remorse, other mitigating factors, and Appellant's rehabilitative needs. Appellant's Brief at 10-11. "[T]his Court has held that an excessive sentence claim—in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question." *Commonwealth v. Raven*, 97 A.3d 1244, 1253 (Pa. Super. 2014) (citation omitted). Because we conclude that Appellant presented a substantial question, we proceed with our analysis.

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias, or ill will, or arrived at a manifestly unreasonable decision.

- 10 -

***Commonwealth v. Fullin***, 892 A.2d 843, 847 (Pa. Super. 2006).

> When imposing a sentence, the sentencing court must consider the factors set out in 42 Pa.C.S. § 9721(b), that is, the protection of the public, gravity of offense in relation to impact on victim and community, and rehabilitative needs of defendant, and it must impose an individualized sentence. The sentence should be based on the minimum confinement consistent with the gravity of the offense, the need for public protection, and the defendant's needs for rehabilitation.

***Commonwealth v. Ferguson***, 893 A.2d 735, 739 (Pa. Super. 2006). Guided by these standards, we must determine whether the court abused its discretion by imposing a "manifestly excessive" sentence that constitutes "too severe a punishment." ***Id.*** Moreover, this Court has explained that when the "sentencing court had the benefit of a presentence investigation report ("PSI"), we can assume the sentencing court 'was aware of relevant information regarding defendant's character and weighed those considerations along with mitigating statutory factors.'" ***Moury***, 992 A.2d at 171.

In the instant case, Appellant, who was a juvenile at the time of his crime, received a sentence of life in prison without the possibility of parole. Following the United States Supreme Court's decisions in ***Miller*** and ***Montgomery***, these sentences were declared unconstitutional. In response to the decision in ***Miller***, our General Assembly enacted 18 Pa.C.S. § 1102.1. The statute provides, *inter alia*, that juveniles who are fifteen years of age or older, but younger than eighteen years of age, who are convicted of first-degree murder after June 24, 2012, "shall be sentenced to a term of life

- 11 -

imprisonment without parole, or a term of imprisonment, the minimum of which shall be at least 35 years to life." 18 Pa.C.S. § 1102.1(a)(1).

Section 1102.1 further provides:

**(d) Findings**.--In determining whether to impose a sentence of life without parole under subsection (a), the court shall consider and make findings on the record regarding the following:

(1) The impact of the offense on each victim, including oral and written victim impact statements made or submitted by family members of the victim detailing the physical, psychological and economic effects of the crime on the victim and the victim's family. A victim impact statement may include comment on the sentence of the defendant.

(2) The impact of the offense on the community.

(3) The threat to the safety of the public or any individual posed by the defendant.

(4) The nature and circumstances of the offense committed by the defendant.

(5) The degree of the defendant's culpability.

(6) Guidelines for sentencing and resentencing adopted by the Pennsylvania Commission on Sentencing.

(7) Age-related characteristics of the defendant, including:

(i) Age.

(ii) Mental capacity.

(iii) Maturity.

(iv) The degree of criminal sophistication exhibited by the defendant.

(v) The nature and extent of any prior delinquent or criminal history, including the success or failure of any previous attempts by the court to rehabilitate the defendant.

(vi) Probation or institutional reports.

(vii) Other relevant factors.

**(e) Minimum sentence**.--Nothing under this section shall prevent the sentencing court from imposing a minimum sentence greater than that provided in this section. Sentencing guidelines promulgated by the Pennsylvania Commission on Sentencing may not supersede the mandatory minimum sentences provided under this section.

18 Pa.C.S. § 1102.1(d), (e). However, our Supreme Court held that Section 1102.1 is not mandated to apply to juveniles, such as Appellant, who were convicted of first or second-degree murder prior to June 25, 2012. ***Commonwealth v. Seskey***, 170 A.3d 1105, 1108 (Pa. Super. 2017) (citing ***Commonwealth v. Batts***, 66 A.3d 286 (Pa. 2013) ("***Batts I***").

In ***Commonwealth v. Batts***, 163 A.3d 410 (Pa. 2017) ("***Batts II***"), our Supreme Court reaffirmed ***Batts I***, and it left undisturbed the mandatory maximum term of life imprisonment under 18 Pa.C.S. § 1102. ***Batts II***, 163 A.3d at 421, 444. Additionally, in ***Batts II***, our Supreme Court explained the individualized sentencing factors from ***Miller***, as follows:

It requires consideration of the defendant's age at the time of the offense, as well as "its hallmark features," including:

immaturity, impetuosity, and failure to appreciate risks and consequences; ... the family and home environment that surrounds him—and from which he cannot usually extricate himself—no matter how brutal or dysfunctional; ... the circumstances of the

homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him; ... that he might have been charged and convicted of a lesser offense if not for incompetencies associated with youth—for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys; ... and the possibility of rehabilitation ... when the circumstances (the youthfulness of the offender) most suggest it.

[**Miller v. Alabama**, 567 U.S.] at 477-478, 132 S.Ct. 2455. **See also id**. at 476, 132 S.Ct. 2455 (stating that in addition to age, a court must also give consideration to a juvenile offender's "background and mental and emotional development ... in assessing his culpability") (quoting **Eddings**[ **v. Oklahoma**,] 455 U.S. [104,] 116, 102 S.Ct. 869, 71 L.Ed.2d 1).

**Batts II**, 163 A.3d at 431-432.

With these principles in mind, we conclude that Appellant's assertions that the trial court failed to consider relevant factors and imposed an excessive sentence are meritless. At the July 7, 2017 sentencing hearing, the trial court provided an exhaustive list of the bases and considerations for the sentence it imposed. The record clearly reflects that trial court thoroughly explained the factors it considered including Appellant's age, personal history, family life, mental health, family background, maturity level, life expectancy, the Commonwealth's recommendation of a sentence of fifty years to life, Appellant's lack of impulse control, remorse,[4] level of culpability, criminal

---

[4] The trial court stated that it would like to believe Appellant was remorseful but it was "taken aback by [Appellant's] self-serving statements[] that no one

sophistication, victim-impact statements, threat to the community, lack of a significant criminal background, capacity for and efforts toward rehabilitation, *Batts II*, Section 1102.1, and the PSI report. N.T. (Sentencing), 7/7/17, at 4-20. The trial court concluded that Appellant was not "incorrigible or irretrievably depraved." *Id.* at 20. However, the trial court found that an additional period of incarceration was warranted under the circumstances of this case. *Id.* The court then imposed a sentence of thirty-eight years to life in prison, with twenty years and 118 days of credit for time served. *Id.*

The record reflects that the trial court carefully considered the circumstances of this case, weighed the relevant mitigating factors, including remorse or lack thereof, and outlined its reasons for the duration of the new sentence. N.T. (Sentencing), 7/7/17, at 4-20. The court set forth the reasons why a longer sentence was improper and the rationale regarding why a shorter sentence would be inappropriate. We conclude that the trial court carefully considered the PSI report, all relevant factors pursuant to 42 Pa.C.S. § 9721(b) and 18 Pa.C.S. § 1102.1, explained the basis for its conclusion, and

---

has given any consideration to the pain that he has suffered." N.T. (Sentencing), 7/7/17, at 16. However, the court noted the steps that Appellant has taken in accepting responsibility for his actions and Appellant's empathy for the victims. *Id.* at 17.

imposed an individualized sentence. Accordingly, Appellant is due no relief on his issues challenging the discretionary aspects of his sentence.[5]

In his final issue, Appellant contends that because he was convicted in 1997, there is no statutory authority for his sentence, and therefore, his sentence is illegal. Appellant's Brief at 5, 18.[6] The determination as to

_____

[5] Appellant also asserts that he was precluded from exhibiting remorse due to the lack of available programs at the correctional facility in which he was housed. Appellant's Brief at 16-17. As noted above, the trial court properly weighed and considered all relevant factors, including remorse, in its statement in support of the sentence imposed. N.T. (Sentencing), 7/7/17, at 4-20. Thus, the assertion that the trial court abused its discretion in failing to consider that Appellant was unable to illustrate remorse due to the State Correctional Institution ("SCI") in which he was housed is meritless. Moreover, the trial court does not determine where an inmate serves his sentence. Rather, after sentencing, the correctional facility where an inmate is housed is left to the discretion of the Pennsylvania Department of Corrections. **Clark v. Beard**, 918 A.2d 155, 160 (Pa. Cmwlth. 2007); 37 Pa.Code § 93.11. Appellant appears to concede this point in his reply brief. Appellant's Reply Brief at 4. Any issue Appellant may have with the SCI in which he is housed or the programs offered therein are issues for the Department of Corrections. To the extent that Appellant contends the trial court abused its discretion by failing to consider inmate housing and the opportunities that housing affords, he has failed to cite any authority to support a challenge to the discretionary aspects of his sentence on this point. Therefore, we deem the issue waived. **See Commonwealth v. Einhorn**, 911 A.2d 960, 969 n.2 (Pa. Super. 2006) (providing that issues that are not supported by citation to authority are waived) (citation omitted).

[6] In Appellant's third issue, he presents a challenge to the legality of his sentence. This issue was not raised in Appellant's Pa.R.A.P. 1925(b) statement. Generally, any issue not raised in a Pa.R.A.P. 1925(b) statement is deemed waived for appellate review. **Commonwealth v. Castillo**, 888 A.2d 775, 780 (Pa. 2005); **Commonwealth v. Lord**, 719 A.2d 306, 309 (Pa. 1998). However, issues related to the legality of a sentence are not subject to waiver and may be considered *sua sponte*. **Commonwealth v. Bezick**, 207 A.3d 400, 402 n.2 (Pa. Super. 2019) (citations omitted). Accordingly, we proceed with our discussion.

whether the trial court imposed an illegal sentence is a question of law; our scope of review is plenary, and our standard of review is *de novo*. ***Commonwealth v. Derrickson***, 242 A.3d 667, 673 (Pa. Super. 2020).

Appellant asserts that 18 Pa.C.S. § 1102.1, which addresses the sentencing of juveniles convicted of murder, applies only to juveniles convicted after June 24, 2012. Appellant's Brief at 19. Thus, under Appellant's interpretation, a juvenile convicted of first-degree murder prior to June 25, 2012, is not subject to any minimum sentence. We conclude such a construction is meritless.

Indeed, case law interpreting and applying ***Miller*** and Section 1102.1 for the resentencing of juveniles convicted of first or second-degree murder prior to June 25, 2012, supports our conclusion that Appellant's sentence is legal. This Court has addressed this issue and held:

> For those defendants convicted of first or second-degree murder prior to June 25, 2012, for whom the sentencing court determines a life without parole sentence is inappropriate, ... it is our determination here that they are subject to a mandatory maximum sentence of life imprisonment as required by Section. 1102[a], accompanied by a minimum sentence determined by the common pleas court upon resentencing.

> ***Seskey***, 170 A.3d at 1108 (citing to ***Batts II***, 163 A.3d at 421) (citation omitted)[.]

*Commonwealth v. Blount*, 207 A.3d 925, 938 (Pa. Super. 2019) (internal footnote omitted).[7] Moreover, there is no authority prohibiting the trial court from looking to 18 Pa.C.S. § 1102.1 as a guide in resentencing a juvenile defendant convicted prior to June 25, 2012, to a minimum sentence of a term of years and a maximum sentence of life in prison. Rather, in the decisions filed after *Miller* and the enactment of Section 1102.1, the courts of this Commonwealth announced that "[t]he sentencing court should fashion the minimum term of incarceration using, **as guidance**, [S]ection 1102.1(a) of the Crimes Code." *Batts II*, 163 A.3d at 460 (emphasis added). Although Section 1102.1 applies specifically to convictions occurring after June 24, 2012, the holding in *Batts II* directs trial courts to consider Section 1102.1 when fashioning a sentence for juveniles convicted prior to June 25, 2012. *Batts II*, 163 A.3d at 460. Additionally, the Supreme Court of Pennsylvania stated: "Trial courts must consider, on the record, the *Miller* factors[8] and

---

[7] In *Blount*, we concluded that the holding in *Miller* did not preclude sentencing courts from ever sentencing a juvenile offender to a sentence of life without parole. *Blount*, 207 A.3d at 938 n.9. Rather, *Miller* required that sentencing courts consider a juvenile's immaturity, capacity for change, and other relevant factors, and to refrain from imposing a term of life without parole except in extreme cases where the sentencing court determines that the juvenile is incapable of rehabilitation. *Id.*

[8] In *Commonwealth v. Knox*, 50 A.3d 732 (Pa. Super. 2012), this Court succinctly described the "*Miller* factors" as follows:

> [A]lthough *Miller* did not delineate specifically what factors a sentencing court must consider, at a minimum it should consider

Section 1102.1 criteria, in all cases where a juvenile is exposed to a sentence of life without parole." ***Commonwealth v. Machicote***, 206 A.3d 1110, 1120 (Pa. 2019).

Herein, upon resentencing, Appellant was "exposed" to a life sentence because the trial court had the option to impose a legal sentence of life without the possibility of parole. ***Batts II***, 163 A.3d at 422. However, the trial court painstakingly discussed and considered all relevant factors when fashioning Appellant's individualized sentence. N.T. (Sentencing), 7/7/17, at 4-20. The record reflects that the trial court specifically considered ***Miller***, ***Batts II***, and Section 1102.1 when it resentenced Appellant. ***Id.*** at 5-20.

Unquestionably, Section 1102.1 and relevant case law permits a minimum sentence of at least thirty-five years to life in prison, with a maximum sentence of life in prison, for a juvenile who was at least fifteen years of age when he was convicted of first-degree murder. 18 Pa.C.S. § 1102.1(a)(1); ***Batts II***, 163 A.3d at 421, 443; ***Blount***, 207 A.3d at 938.

---

a juvenile's age at the time of the offense, his diminished culpability and capacity for change, the circumstances of the crime, the extent of his participation in the crime, his family, home and neighborhood environment, his emotional maturity and development, the extent that familial and/or peer pressure may have affected him, his past exposure to violence, his drug and alcohol history, his ability to deal with the police, his capacity to assist his attorney, his mental health history, and his potential for rehabilitation.

***Knox***, 50 A.3d at 745 (citation omitted).

Thus, the trial court, guided by Section 1102.1 and authorized by case law, imposed a minimum sentence of thirty-eight years of incarceration and a maximum sentence of life in prison.

We conclude that Appellant's sentence of thirty-eight years to life in prison was legal. *Batts II*, 163 A.3d at 421, 443; *Blount*, 207 A.3d at 938. Accordingly, Appellant's challenge to the legality of his sentence is meritless.

For the reasons set forth above, we conclude that Appellant is entitled to no relief. Accordingly, we affirm the judgment of sentence entered on July 7, 2017.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 02/17/2021