J-S31035-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GARY DUNCAN | : | |
| | : | |
| Appellant | : | No. 1649 WDA 2018 |

Appeal from the Judgment of Sentence Entered April 4, 2018
In the Court of Common Pleas of Jefferson County Criminal Division at
No(s):  CP-33-CR-0000054-2007

BEFORE:  OLSON, J., STABILE, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:          **FILED SEPTEMBER 13, 2019**

Gary Duncan appeals from the judgment of sentence entered following the trial court's revocation of his probation. Duncan argues that the trial court imposed an excessive sentence. We affirm.

The facts and procedural history of this case are as follows. On June 9, 2007, Duncan pled guilty to Involuntary Deviate Sexual Intercourse with a 13-year-old girl.[1] The trial court sentenced him to five to 10 years' incarceration followed by 10 years' probation, with credit for time served. The court also found him to be a sexually violent predator ("SVP"). Some of the conditions of his probation included informing the Pennsylvania State Police ("PSP") of where he was employed as well as registering with PSP as an SVP. ***See*** Notice,

---

[1] 18 Pa.C.S.A. § 3123(a)(7).

filed 1/16/08. The court also ordered that Duncan pay restitution to the victim as well as other fees. *See* Amended Sentence, filed 1/21/08.

After completing his ten-year sentence of incarceration, Duncan was released from prison. On February 14, 2017, the Jefferson County Adult Probation Department alleged that Duncan had committed a technical violation of probation by failing "to find an approvable home plan." *See* Notice of Charges and Hearing Rights & Written Request for Revocation, filed 2/14/17.[2] The court held a hearing and ordered that Duncan be "released from the bench forthwith to reside at his approved home plan at the Just for Jesus Shelter." *See* Review Hearing Order, filed 4/3/17.

However, the Just for Jesus Shelter asked Duncan to leave, and as a result, his probation officer filed a second revocation petition. The petition alleged technical violations both for his having been asked to leave the shelter and for his not having an approved home plan. *See* Notice of Charges and Hearing Rights & Written Request of Revocation, filed 6/5/17. After a hearing, the court ordered that Duncan remain in custody until the probation

_____

[2] The revocation request provided the following:

> Offender maxed out about 2 weeks ago, has failed to find an approvable home plan. Last night he left the address he was given permission to temporarily reside at, went and stayed somewhere we did not approve or know about. He had a scheduled appointment with the agent today. When he was not found at his approved temp address the agent went looking for him. Finally, offender responded to phone call and met up with agent.

Revocation Request, filed 2/14/17.

department approved a home plan. **See** Review Hearing Order, filed 6/9/17. Following another revocation petition and further hearings, the court released Duncan in July 2017 to a temporary home plan, with him to relocate by January 1, 2018, to an approved home plan. **See Gagnon** Order, filed 7/21/17.

Duncan's probation officer filed the subject revocation petition in November 2017. This petition alleged technical violations for Duncan's failure to inform PSP of his change in employment, his failure to register as an SVP with PSP, and his failure to comply with his payment plan for his restitution and fines.

Before the court decided the subject revocation petition, the Commonwealth instituted criminal charges against Duncan for failure to comply with registration requirements and disorderly conduct.[3] Duncan pled guilty to the disorderly conduct charge and the Commonwealth *nolle prossed* the failure to register charge.

The court then held a **Gagnon I**[4] hearing on the subject revocation petition. A probation officer, Paul Ruffner, informed the court of Duncan's guilty plea and technical violations:

---

[3] 18 Pa.C.S.A. §§ 4915.1(a)(1) and 5503(a)(4), respectively.

[4] "When a parolee or probationer is detained pending a revocation hearing, due process requires a determination at a pre-revocation hearing, a **Gagnon I** hearing, that probable cause exists to believe that a violation has been committed." **Commonwealth v. Ferguson**, 761 A.2d 613, 617 (Pa.Super. 2000); **see also Gagnon v. Scarpelli**, 411 U.S. 778 (1973).

> Mr. Ruffner: . . . I would also like the court to take judicial notice of a plea and sentence in Indiana County which on March 2nd, 2018, he was sentenced to disorderly conduct. It was an M3. This does stem from a failure to register under Megan's Law. That charge was *nolle prossed*, and he also has technical violations for condition No. 2, failed to abide by the verbal instructions from his supervising officer. He was advised verbally by telephone by Officer Oakes on October 12, 2017, to notify [PSP] of a change in employment status. Also on October 20th, 2017, during an office contact, he reported he had not notified [PSP] of his change in employment. He was also instructed to give the change of address. He failed to report that to the [PSP] as instructed. Condition 4 is, he's been sentenced, and condition 11B, he [has] failed to complete his pay plan, with a balance of $1,146.64.

N.T., *Gagnon I* Hearing, 3/29/18, at 2.

Duncan waived his right to counsel and admitted that he failed to register with his probation officer and failed to inform PSP of his employment changes. *Id.* at 3-4. The court ordered an updated Pre Sentence Investigation report ("PSI") and scheduled a *Gagnon II*[5] hearing the following week. At this hearing, Duncan again waived his right to counsel, and the trial court revoked his probation and sentenced him to 10 to 20 years' incarceration with credit for time served. *See* N.T., *Gagnon* II Hearing, 4/4/18, at 2-3, 5. The court placed the following explanation for the sentence on the record:

> The Court: Mr. Duncan, I've reviewed your [PSI]. I've considered your age, your background, your prior record, everything contained in the [PSI] and everything necessary for sentencing.
>
> And of course, we go back to the original offense involving an eight-year-old child, the sex offense, and your problems from a chronological standpoint in detail.

---

[5] "Where a finding of probable cause is made, a second, more comprehensive hearing, a *Gagnon* II hearing, is required before a final revocation decision can be made." *Ferguson*, 761 A.2d at 617.

Now, the last time we were here, Mr. Oakes of probation did not agree with the home plan, but I [let] you go there, and here we are with another violation, and you've failed to change. You got charged with failing to register.

\*\*\*

The Court: Well, for the violation I found, I mean, I think you're a danger – [that's] why I think Mr. Oakes' recommendation is a little on the high end because you're a risk to children.

*Id.* at 4-5.[6]

Duncan told the court that he did not understand the sentence, and the court reminded Duncan that it had told him multiple times that if he violated his probation, the court would sentence him to "ten to twenty." *Id.* at 6.

Duncan filed a timely *pro se* post-sentence motion, which the court denied. Duncan then retained counsel who filed a Petition for Reinstatement of Post Sentencing and Appellate Rights *Nunc Pro Tunc*, which the trial court granted. **See** Petition for Reinstatement of Post-Sentencing and Appellate Rights *Nunc Pro Tunc*, filed 10/11/18; **see also** Opinion and Order of Court, filed 10/18/18 (granting Petition for Reinstatement). Duncan then filed a counseled post-sentence motion alleging that the sentence was excessive. **See** Motion for Reconsideration of Sentence and/or Motion to Modify Sentence, filed 10/26/18. The trial court denied the motion and this timely appeal followed.

---

[6] Prior to sentencing Duncan, the court incorrectly stated that the victim in this case was eight-years-old. The certified record reflects that the victim was 13-years-old.

Duncan raises one issue: "Did the trial court abuse its discretion when it sentenced [Duncan] to a period of 10 – 20 years' incarceration after [Duncan] was found in violation of probation for having been convicted of a Misdemeanor of the Third Degree while on this court's probation?" Duncan's Br. at 5.

Duncan challenges the discretionary aspects of his sentence. Therefore, we must first determine whether: 1) the appeal is timely; 2) appellant preserved the issue; 3) the brief includes a Pa.R.A.P. 2119(f) statement; and 4) the appellant has raised a substantial question. *See Commonwealth v. Foust*, 180 A.3d 416, 438-39 (Pa.Super. 2018). Here, Duncan's appeal is timely, he preserved the issue in his post-sentence motion, and his brief contains a Rule 2119(f) statement. We now turn to whether he has raised a substantial question.

Duncan maintains that the court's "sentence was manifestly excessive, an abuse of discretion and did not adequately consider the sentencing factors it is required to consider pursuant to 42 Pa.C.S.A. § 9721." Duncan's Br. at 8. This claim raises a substantial question. *See Commonwealth v. Caldwell*, 117 A.3d 763, 770 (Pa.Super. 2015) (*en banc*) (concluding claim of excessive sentence that violates Sentencing Code raises a substantial question).

On the merits, Duncan's claim fails. Duncan asserts that his sentence is excessive because "the Court was effectively sentencing [Duncan] to 10 years' incarceration for a Disorderly Conduct conviction when the original underlying

sentence was half the violation sentence." Duncan's Br. at 16. The record belies Duncan's argument.

We review a challenge to the discretionary aspects of sentence for an abuse of discretion. ***Commonwealth v. Blount***, 207 A.3d 925, 934 (Pa.Super. 2019). "Upon revocation the sentencing alternatives available to the court shall be the same as were available at the time of initial sentencing . . . ." 42 Pa.C.S.A. § 9771(b). Additionally, once the court revokes probation, it may impose total confinement where:

(1)   The defendant has been convicted of another crime; or

(2)   The conduct of the defendant indicates that it is likely that he will commit another crime if he is not imprisoned; or

(3)   Such a sentence is essential to vindicate the authority of the court.

42 Pa.C.S.A. § 9771(c).

Here, the trial court revoked Duncan's probation following his conviction for disorderly conduct and imposed a sentence of total confinement. Upon revocation, the court's sentencing alternatives became the same as when it initially sentenced Duncan in 2007. Having been convicted of a crime graded as a felony of the first degree, the court had the ability to sentence Duncan to a total of 20 years. ***See*** 18 Pa.C.S.A. § 3123(a)(7) (representing that IDSI of a child less than 16 years of age is a felony of the first degree); ***see also*** 18 Pa.C.S.A. § 1103(1) (setting maximum sentence for felony of the first degree at 20 years' imprisonment). The court pointed out Duncan's repeated technical

violations to his probation, some of which Duncan admitted, *i.e.*, his failing to register with his probation officer and his failing to inform PSP of his employment changes. Thus, the trial court concluded Duncan was noncompliant with "even the most basic rules, like keeping in touch with his probation officer and not breaking any more laws." Trial Court Opinion, filed 12/21/18, at 1. Additionally, the court concluded that this noncompliance was a risk to children and "the [c]ourt was unwilling to give [Duncan] a chance to commit a serious offense that could potentially alter his victim's life forever." *Id.* at 2. In these circumstances, the revocation sentence was not an abuse of discretion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/13/2019